Fred HURVICH, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant.

No. C–77–2478 SW.

United States District Court, N. D. California.

Sept. 15, 1978.

Law Offices of Kruger, McTaggart, McQuaid & Bedford, A Law Corp., J. Dennis McQuaid, Ignacio, Cal., for plaintiff.

G. William Hunter, U. S. Atty., William T. McGivern, Jr., Asst. U. S. Atty., Civ. Div., San Francisco, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

SPENCER WILLIAMS, District Judge.

The parties are before the court on cross motions for summary judgment. After careful consideration of the issues raised and arguments of counsel, the court finds there is no triable issue of fact and that plaintiff is entitled to judgment as a matter of law.

## BACKGROUND

The undisputed facts before the court show that plaintiff Fred Hurvich is the widower of Laura Hurvich, who died on November 6, 1969. When Mrs. Hurvich died she was an insured wage earner under the Social Security Act.

On December 29, 1969 Mr. Hurvich filed applications for a lump-sum death benefit and for child's insurance benefits, both of which were subsequently awarded. At the time of applying for these benefits, Mr. Hurvich stated he wished to apply for mother's insurance benefits, as he was caring for his child and fulfilling the role normally filled by a mother. Section 402(g) of Title 42 of the United States Code provided for such mother's benefits. An employee of the Social Security Administration told Mr. Hurvich that he could not apply for these benefits.

On March 19, 1975 the Supreme Court in *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514, affirmed a lower court's determination that the gender-based distinction in § 402(g) violated the right to equal protection secured by the due process clause of the Fifth Amendment. The different treatment accorded men and women by § 402(b) was found to discriminate impermissibly against female wage earners by affording them less protection for their survivors than that given to male wage earners.

The Social Security Administration responded to the Supreme Court's ruling by promulgating 20 C.F.R. § 404.335(a) (1977) which provides that a widower of a woman who died fully or currently insured is entitled to father's insurance benefits, such benefits to begin no earlier than the first month after February, 1975. On May 15, 1975, the Administration accepted from Mr. Hurvich a formal application for father's insurance benefits, and on June 10, 1975, Mr. Hurvich was awarded these benefits. The Administration established the date of entitlement as March, 1975.

On October 27, 1975 Mr. Hurvich sought an earlier entitlement date. The Social Security Administration reaffirmed the Feb-

ruary, 1975 date, as did the Administrative Law Judge from whom Mr. Hurvich subsequently received a hearing. Thereafter, Mr. Hurvich obtained a review by the Appeals Council of the Social Security Administration, which upheld the hearing officer's decision.

The issue before this court is whether the ruling of *Weinberger v. Wiesenfeld*, striking down the gender-based distinction in § 402(g), should be applied retroactively to entitle Mr. Hurvich to father's benefits for the period between December, 1969, and March, 1975.

## STANDARDS FOR NONRETROACTIVITY

■ The Constitution neither prohibits nor requires that changes in the law be applied retroactively. *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The standards for deciding whether or not a decision in a non-criminal context should be made retroactive have been set forth by the Supreme Court in a three-part test. This test analyzes the factors upon which a finding of nonretroactivity can be based:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed, . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivi-

ty." . . . *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). (citations omitted.)

■ The preliminary finding necessary to support a determination of nonretroactivity is that the decision must establish a new principle of law by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. To decide whether the *Wiesenfeld* decision did either of these things, the court must look to pre-*Wiesenfeld* cases dealing with gender-based distinctions.

Mr. Hurvich is correct in arguing that the result in *Wiesenfeld* was foreshadowed by *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). The Court there found an invidious discrimination in statutes that presumed spouses of male members of the armed services to be dependents for the purpose of obtaining increased quarters allowances and increased medical and dental benefits, but required spouses of female members to prove they were in fact dependent for over one-half of their support in order to obtain the same benefits. Mr. Hurvich supports his argument by referring to the following language in *Wiesenfeld*: "The gender-based distinction made by § 402(g) is indistinguishable from that invalidated in *Frontiero*." 420 U.S. at 642, 95 S.Ct. at 1230. In the Court's view, the statutes under review in both cases tried to give support to the family through the use of an "archaic and overbroad generalization, . . . that male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support." 420 U.S. at 643, 95 S.Ct. at 1230–1231.

Foreshadowing of *Wiesenfeld* also is seen in *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), where the Court found a violation of equal protection in a provision of a state probate code that gave preference to men over women for appointment as administrator of a decedent's estate. This statute was invalidated on equal protection grounds because it provided—as did

§ 402(g)—dissimilar treatment for men and women who were similarly situated.

The foreshadowing previously described, however, is dimmed by decisions of the Supreme Court upholding certain gender-based distinctions found to be benign. In *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), the Court found no equal protection violation in a state property tax exemption given to widows but not to widowers. The statute was upheld as being "reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden." 416 U.S. at 355, 94 S.Ct. at 1737. Similarly, in *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), the Court upheld statutes granting a longer period of tenure to female naval officers than to male naval officers. This different treatment was found to be rationally related to the congressional goal of providing women officers—who because they were women had restrictions placed on their participation in combat and sea duty—with fair career advancement opportunities.

The litigants in the present case might have believed before the *Wiesenfeld* decision that the gender-based distinction of § 402(g) giving special benefits to widows but not to widowers, was like the statutory schemes in *Kahn* and *Schlesinger*; that is, that the distinction was permissibly based upon the goal of compensating women for certain gender-based disadvantages. Although *Frontiero* and *Reed* foreshadowed the Court's conclusion that the gender-based classification of § 402(g) was invidious rather than benign, because it operated "to deprive women of protection for their families which men receive as a result of their employment," *Wiesenfeld*, 420 U.S. at 645, 95 S.Ct. at 1232, the conclusion most certainly had not been "clearly" foreshadowed.

The fact that *Wiesenfeld* was not clearly foreshadowed suggests that it established a new principle of law. Moreover, since 1939 the § 402(g) limitation of benefits to mothers had been a clear precedent on which the Social Security Administration was entitled to rely. Although this gender-based distinction may have been rendered suspect by decisions such as *Frontiero* and *Reed*, the Administration had a *duty* to enforce the statute as written. *Wiesenfeld*, therefore, established a new principle of law by overruling a clear past precedent.

■ The government argues that a satisfaction of this first part of the *Chevron* test would, without more, support a finding of non-retroactivity. However, as this court observed in a previous opinion, to deny retroactive relief a decision must establish a new principle of law; if it does, the court must then decide whether retroactive application will further the purpose of the rule in question, and whether inequity will be caused by such retroactivity. *Shannon v. United States Civil Service Commission*, 444 F.Supp. 354, 370 (N.D.Cal.1977). The conclusion that *Wiesenfeld* established a new principle of law is but a threshold below which a finding of nonretroactivity may not be made.

The second part of the *Chevron* test directs the court to look to the purpose and effect of the rule, in the present case § 402(g), and to determine whether retroactive application will further or retard the operation of the rule.

■ The purpose behind § 402(g), as revealed by its legislative history, is to provide children who have lost a parent with the personal attention of the other parent by enabling the survivor to stay at home and care for the children. *Wiesenfeld*, 420 U.S. at 649, 651, 95 S.Ct. 1225. Widowers were excluded from the scope of the statute, not because it was a congressional purpose to keep them at work outside the home, but because of the congressional presumption that women as a group, and not men, would choose to stay at home rather than work outside the home. *Wiesenfeld*, 420 U.S. at 652, 95 S.Ct. 1225.

Retroactive application of the *Wiesenfeld*, decision, the government argues, will not further the purpose of the statute, since a retroactive award of benefits will have no

effect upon the degree of parental care exercised by Mr. Hurvich during the period between December, 1969, and March, 1975. His decision to work or to stay home during that period cannot be influenced by a retroactive award of father's benefits. This is true. It is also true that although retroactive application of the *Wiesenfeld* decision will not further the above-articulated purpose of § 402(g), neither will it retard that purpose.

Section 402(g) is a part of a large number of amendments added to the Social Security Act in 1939. The general purpose behind these amendments taken as a whole was to protect more fully the family as a unit. 420 U.S. at 643, 95 S.Ct. 1225. An award of retroactive father's benefits would surely tend to support rather than defeat this objective. It is likely that a widower who chose to remain at home to care for his children during the years before 1975 would have been forced to deplete his family's financial resources. A retroactive award would aid the family by replacing some of these lost resources. A consideration of the more generalized purpose behind § 402(g)—family protection—tips the scales toward a finding of retroactivity.

The third part of the test articulated by *Chevron* is a consideration of any inequity imposed by retroactive application of a decision. If substantial inequitable results would be produced by granting Mr. Hurvich retroactive father's benefits, there would be a basis for a holding of nonretroactivity.

The government argues that a finding of retroactivity would impose an inequitable burden upon the Social Security fund because the depletion of the fund's resources would impair its ability to make payments to those who are currently eligible for benefits. It should be remembered, however, that the present case involves only the particular situation of Mr. Hurvich. This court cannot conclude that an award of retroactive benefits to one person, for a period of six years, would have any significant impact upon the fiscal integrity of the Social Security system.

Even if all individuals similarly situated were asking for retroactive benefits, it is doubtful that significant inequity would result. The government has not come forward with any evidence that would indicate a significant burden upon the Social Security system if such benefits were to be granted. The government simply refers to the "hardship" and "disruptive effects" which would be caused. The Seventh Circuit rejected a similar argument in a case where it granted retroactive application of the Supreme Court's holding that illegitimate children born after the onset of their parent's disability should be included in the class of children eligible for Social Security benefits. *Jimenez v. Weinberger*, 523 F.2d 689 (7th Cir. 1975). The Seventh Circuit quoted the Supreme Court to say that there was no evidence to support the claim that allowing " 'illegitimates in the classification of appellants to receive benefits would significantly impair the federal Social Security trust fund and necessitate a reduction in the scope of persons benefited by the Act.' " 523 F.2d at 704, quoting *Jimenez v. Weinberger*, 417 U.S. 628, 633, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). Moreover, as the Court in *Wiesenfeld* pointed out, benefits under § 402(g) decrease with increased earnings. 420 U.S. at 653, 95 S.Ct. 1225. Many, perhaps most, widowers continued working outside the home. They would, therefore, receive either minimal father's benefits or none at all.

It is the opinion of this court the equities argue in favor of Mr. Hurvich. Survivors' benefits are " 'a matter of right, related to past participation in the productive processes of the country.' " *Wiesenfeld*, 420 U.S. at 646–47, 95 S.Ct. at 1232, quoting Final Report of the Advisory Council on Social Security 17 (1938). It would be inequitable if Mr. Hurvich were to be denied his right to such benefits for a certain period of time because during that period there existed an unconstitutional gender-based distinction.

## CONCLUSION

■ This court finds that since the standards for nonretroactivity, as articulated in

*Chevron v. Huson*, have not been met, the holding of *Weinberger v. Wiesenfeld*, extending the benefits of 42 U.S.C. § 402(g) to widowers, should be applied to Mr. Hurvich for the period of time beginning in December, 1969. Although *Wiesenfeld* did establish a new principle of law, retroactive application will further rather than retard the purpose behind § 402(g), and such retroactivity will not produce substantial inequitable results.