Gary WILSON, Claimant in the death
of Dean Booth Wilson, Petitioner,

v.

JIM SNYDER DRILLING, State Compensation Insurance Fund, Division of Labor, and The Industrial Commission of the State of Colorado, Respondents.

No. 86SC325.

Supreme Court of Colorado,
En Banc.

Dec. 14, 1987.

Richard T. Goold, Denver, for petitioner.

Russell A. Stanley, Denver, for respondents Jim Snyder Drilling and State Compensation Ins. Fund.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for respondent Indus. Com'n of the State of Colo.

Paul Conaway, Denver, for amicus curiae Colo. Trial Lawyers Ass'n.

LOHR, Justice.

In *Wilson v. Jim Snyder Drilling*, 729 P.2d 1022 (Colo.App.1986), the Colorado Court of Appeals held that cost-of-living increases in federal social security death benefits are not "periodic death benefits" within the meaning of section 8–50–103, 3B C.R.S. (1986), and therefore cannot be deducted from state workers' compensation death benefits. In reaching that result, the court of appeals relied upon *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231 (Colo.1984), in which we reached a like conclusion as to periodic disability ben-

efits payable under section 8-51-101(1)(c), 3B C.R.S. (1986). The court of appeals also noted that in its decision in *Rusk v. Industrial Commission*, 716 P.2d 156 (Colo.App. 1985),[1] it had held that *Engelbrecht* should not be applied retroactively to permit recovery of offsets taken prior to April 23, 1984, the date of announcement of *Engelbrecht*. Concluding that the same retroactivity considerations apply to deductions for cost-of-living adjustments in social security death benefits as pertain to such adjustments in social security disability benefits, the court of appeals held that the claimant, Gary Wilson, could not recover for cost-of-living increases in social security death benefits deducted from his workers' compensation death benefits prior to our decision in *Engelbrecht*. We granted certiorari and now affirm the holding of the court of appeals that the cost-of-living deductions were improper but reverse the determination that the claimant cannot recover for any such deductions taken prior to *Engelbrecht*.

## I.

The father of Gary Wilson was killed in an on-the-job accident in December of 1977. The decedent was an employee of Jim Snyder Drilling, whose workers' compensation insurance carrier was the State Compensation Insurance Fund (State Fund). As a dependent minor child, Gary Wilson was awarded periodic workers' compensation death benefits pursuant to section 8-50-103, 3B C.R.S. (1986).[2] Wilson was also eligible for and received periodic federal social security death benefits. Pursuant to section 8-50-103, the State Fund reduced Wilson's state periodic death benefits by the amount of his social security periodic death benefits. As cost-of-living increases were added to Wilson's social security benefits from time to time, the State Fund also deducted these increases from his state

benefits. Wilson's case was closed before we issued our opinion in *Engelbrecht*.

On May 25, 1984, approximately one month after we announced our decision in *Engelbrecht*, Wilson filed a petition to reopen his case, seeking reimbursement of the deductions taken from his state periodic death benefits for the cost-of-living increases in his social security death benefits. A hearing was held before a hearing officer on October 9, 1984. The hearing officer subsequently issued his Findings of Fact, Conclusions of Law, and Order on March 4, 1985. The hearing officer implicitly held, upon the basis of our decision in *Engelbrecht*, that section 8-50-103 does not authorize the deduction of cost-of-living increases in social security death benefits from state death benefits. The hearing officer ruled, however, that *Engelbrecht* should be applied prospectively only, with the result that Wilson could recover nothing since all of the erroneous deductions in his case predated *Engelbrecht*. On August 6, 1985, the Industrial Commission (Commission) adopted and affirmed the decision of the hearing officer.

Wilson appealed the Commission's decision to the Colorado Court of Appeals. The court of appeals affirmed the order of the Commission, holding that section 8-50-103 does not authorize the deduction of social security cost-of-living increases, but that *Engelbrecht* should be applied prospectively only. *Wilson v. Jim Snyder Drilling*, 729 P.2d 1022 (Colo.App.1986). Wilson then filed a petition for certiorari with this court. We granted certiorari.

## II.

In *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231 (Colo.1984), we faced the issue of whether cost-of-living increases in social security disability benefits are themselves "periodic disability ben-

---

**1.** After we granted certiorari in *Rusk v. Industrial Commission*, 716 P.2d 156 (Colo.App.1985), the parties settled the case, and we remanded it to the court of appeals to be returned to the Industrial Commission for review of a proposed settlement agreement, pursuant to a stipulation by the parties. In *Marinez v. Industrial Commission*, 746 P.2d 552 (Colo.1987), we rejected

the nonretroactivity rule adopted by the court of appeals in *Rusk*.

**2.** Section 8-50-103, 3B C.R.S. (1986), is identical to § 8-50-103, 3 C.R.S. (1977 Supp.), in effect at the time death benefits were first awarded to Gary Wilson, with one exception not relevant to the issues addressed in this opinion.

efits" within the meaning of section 8–51–101(1)(c), 3B C.R.S. (1986), and therefore trigger deductions from state workers' compensation permanent disability benefits. Section 8–51–101(1)(c) provides in pertinent part:

> In cases where it is determined that periodic disability benefits granted by the federal old-age, survivors, and disability insurance act are payable to an individual and his dependents, the aggregate benefits payable for temporary total disability, temporary partial disability, permanent partial disability, and permanent total disability pursuant to this section shall be reduced, but not below zero, by an amount equal as nearly as practical to one-half such federal periodic benefits....[3]

We held that to interpret the phrase "periodic disability benefits" in section 8–51–101(1)(c) to include cost-of-living increases in social security disability payments would not be consistent with the purposes of the Workmen's Compensation Act, sections 8–40–101 to 8–54–127, 3B C.R.S. (1986 & 1987 Supp.), "to protect employees who suffer injuries arising out of their employment and to give injured workers a reliable source of compensation." *Engelbrecht,* 680 P.2d at 233. Furthermore, we noted that to allow an injured worker to retain the full cost-of-living increase in federal benefits would not contravene the intent of the General Assembly to prevent double awards, *i.e.,* payment of the full amount of social security and workers' compensation benefits for the same disability. We explained:

> [A] cost-of-living increase [in federal social security disability benefits] does not result in a double award. The federal government has decided that it will maintain the buying power of social security payments, not that it will provide additional benefits for a particular injury. Because Colorado does not provide benefits to keep pace with inflation, there is no double payment.

*Id.* Finally, we noted that "allowing an insurer to deduct one-half the cost-of-living increase each time one occurs, and thus decrease the amount the insurer owes, is not consistent with the goal [of the Workmen's Compensation Act] of determining with certainty the amount owed." *Id.* Therefore, we held that cost-of-living increases in social security disability benefits may not be deducted from workers' compensation disability benefits pursuant to section 8–51–101(1)(c).

### III.

The issues in the case before us are whether the rationale of *Engelbrecht,* which related to disability benefits, is applicable as well to death benefits, and if so whether the claimant can recover the cost-of-living increases in federal death benefits that were previously deducted from his state workers' compensation death benefits. These are issues of first impression.

The parties have characterized this case as presenting the single question of whether *Engelbrecht* should be applied retroactively to the petitioner's claim. The Commission and the court of appeals addressed the issue as characterized by the parties. The issue, however, is not the retroactive application of *Engelbrecht.* In *Engelbrecht* we construed section 8–51–101(1)(c), the state periodic disability benefit statute. The instant case requires us to interpret section 8–50–103, the state periodic death benefit statute. The retroactive application of *Engelbrecht* is not implicated in this case, except by analogy. Instead, we must decide whether section 8–50–103 authorizes the deduction of cost-of-living increases in social security benefits. If such deductions are not authorized, we must then decide whether the claimant in this case can recover amounts erroneously so deducted from his state death benefits in the past.

### A.

Section 8–50–103 provides:

---

**3.** Section 8–51–101(1)(c), relating to state workers' compensation disability benefits, authorizes a deduction for only *one-half* of the federal periodic disability benefits. Section 8–50–103, relating to state workers' compensation death benefits, however, authorizes a deduction for the *full amount* of the federal periodic death benefits.

In case of death, the dependents of the deceased entitled thereto shall receive as compensation or death benefits sixty-six and two-thirds percent of the deceased employee's average weekly wages, not to exceed a maximum of eighty percent of the state average weekly wage per week for accidents occurring on or after September 1, 1975, and not less than a minimum of twenty-five percent of the applicable maximum per week. In cases where it is determined that periodic death benefits granted by the federal old age, survivors, and disability insurance act or a workmen's compensation act of another state or of the federal government are payable to an individual and his dependents, the aggregate benefits payable for death pursuant to this section shall be reduced, but not below zero, by an amount equal to one hundred percent of such periodic benefits.

While our decision in *Engelbrecht* is central to our decision here, it is not dispositive. Disability benefits awarded to a worker under section 8–51–101(1)(c) and death benefits awarded to a worker's dependents under section 8–50–103 are distinct and independent from one another. *In Re Claim of Dick v. Industrial Commission*, 197 Colo. 71, 73–74, 589 P.2d 950, 951 (1979).

As in *Engelbrecht*, however, the question of the deductibility of the federal cost-of-living increases at issue here must be examined in light of the purposes of the Workmen's Compensation Act (the Act). The primary goals of the Act are to protect workers injured as a result of their employment and to provide workers with a reliable source of compensation. *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231, 233 (Colo.1984); *Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo.1982). These protective purposes of the Act extend as well to workers' dependents. *Union Carbide Corp. v. Industrial Commission*, 196 Colo. 56, 62, 581 P.2d 734, 738 (1978); *Garner v. Vanadium Corp.*, 194 Colo. 358, 360, 572 P.2d 1205, 1206–07 (1977).

In *Engelbrecht*, we held that to interpret the phrase "periodic disability benefits" in section 8–51–101(1)(c) to include cost-of-living increases in social security disability payments would not be consistent with the purposes of the Act. *Engelbrecht*, 680 P.2d at 233. We reasoned that allowing workers to retain the full amount of such increases better protected them and provided them with a more reliable source of income. *Id.* This reasoning applies equally in determining whether "periodic death benefits" in section 8–50–103 should be construed to include cost-of-living increases in federal death benefits. The only difference is that section 8–50–103 is concerned with the workers' dependents. We therefore hold that section 8–50–103 does not authorize the deduction of cost-of-living increases in periodic federal social security benefits from state periodic death benefits.

### B.

The parties pose the issue of whether Wilson can recover the federal cost-of-living increases erroneously deducted from his state death benefits as one of whether *Engelbrecht* should be applied retroactively to payments made before that decision was announced. As previously discussed, however, although *Engelbrecht* presented a question closely analogous to the one before us today, it is not controlling. We have decided the proper construction of section 8–50–103 today for the first time.

The question before us, therefore, is not directly one of retroactivity. Rather, it is whether the hearing officer erred or abused his discretion in declining to allow Wilson to recover the sums erroneously deducted from his state death benefits.[4] Wilson's case was closed at the time he sought recovery of the erroneous reductions by petition to reopen, filed May 25, 1984. At that time, section 8–53–113 of the Act governed the reopening of closed awards. It provided:

---

**4.** It is not entirely clear from the hearing officer's ruling whether he declined to reopen Wilson's award or reopened it and disallowed Wilson's claim on the basis that there could be no recovery of cost-of-living adjustments deducted prior to *Engelbrecht*.

At any time within six years from the date of injury or at any time within two years after the date the last compensation becomes due and payable, whichever is longer, the director or a hearing officer may, after notice to all parties, review and reopen any award on the ground of an error, a mistake, or a change in condition. If an award is reopened, compensation and medical benefits previously ordered may be ended, diminished, maintained, or increased. No such reopening shall affect the earlier award as to moneys already paid. Any order entered under this section shall be subject to review in the same manner as other orders.[5]

§ 8–53–113, 3 C.R.S. (1984 Supp.).

■ A hearing officer's decision whether to reopen an award can be reversed only for fraud or clear abuse of discretion. *Padilla v. Industrial Commission*, 696 P.2d 273, 277–78 (Colo.1985). We believe that if the construction that we adopt today for section 8–50–103 is to be applied retroactively in other cases in which cost-of-living increases in federal social security death benefits have been erroneously deducted from state death benefits, then it would be a clear abuse of discretion not to permit Wilson to reopen his award and recover the amounts deducted in error in the present case. This brings us indirectly to the question of whether our decision today should be applied retroactively.

### C. .

■ We addressed the retroactivity issue in detail in *Marinez v. Industrial Commission*, 746 P.2d 552 (Colo.1987), as it relates to the analogous issue of deductions for cost-of-living increases in federal disability benefits in arriving at state workers' compensation disability benefit payments. We

relied on the test established in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and followed by us in *People in the Interest of C.A.K.*, 652 P.2d 603 (Colo.1982), to resolve the retroactivity question. We summarized the *Chevron* test as follows:

> In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the United States Supreme Court set forth the standards governing the question of retroactivity in federal civil cases. Under *Chevron*, a court is to consider three separate factors. First, a "decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* at 106, 92 S.Ct. at 355 (citations omitted). Second, the court must " 'weigh the merits and demerits [of retroactive application] in each case by looking to the history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation.' " *Id.* at 106–07, 92 S.Ct. at 355 (quoting *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1738, 14 L.Ed.2d 601 (1965)). Third, the court must weigh the inequity that would be imposed by retroactive application in order to avoid injustice or hardship. *Id.* 404 U.S. at 107, 92 S.Ct. at 355–56.

*Marinez*, at 556. The question of retroactivity arises only when a decision establishes a new rule of law. *Id.* at 557. When that condition has been met, we must weigh in the balance all the factors favoring and disfavoring retroactive application, giving each such weight as may be dictated

---

**5.** In this case the record contains no indication that a hearing was ever held to consider the issue of the propriety of the deductions for federal cost-of-living increases before Wilson's case was closed. At least in these circumstances, we conclude that reopening the award to consider this issue is consistent with the statutory prohibition against affecting "the earlier award as to moneys already paid." § 8–53–113, 3 C.R.S. (1984 Supp.). *Cf. Morrison v. Clayton*

*Coal Co.*, 116 Colo. 501, 504–05, 181 P.2d 1011, 1013 (1947) (the only way that "moneys already paid" could be affected by a review would be by a finding "that those moneys were not the property of the claimant but must be returned to the insurer"). *See also Gregorich v. Industrial Commission*, 117 Colo. 423, 188 P.2d 886 (1948); *Travelers Insurance Co. v. Industrial Commission*, 646 P.2d 399 (Colo.App.1981).

by the strength of the equitable and policy considerations underlying each. *Id.*

### 1.

■ We begin with the first part of the *Chevron* test, whether our decision today establishes a new principle of law. Our decision does not overrule any previous judicial decisions; we are simply interpreting a statute, section 8–50–103, for the first time. The hearing officer, however, took administrative notice that the interpretation of section 8–50–103 that we find today to be correct is contrary to a universal and long-standing practice of insurance carriers by which they deducted cost-of-living increases in federal social security death benefits from state workers' compensation death benefit payments. For reasons more fully explicated in *Marinez* with respect to the analogous retroactivity question concerning disability benefits, we conclude that our decision today does establish a new principle of law for the purposes of the *Chevron* test. *Cf. Marinez*, at 557–558 (employing the same reasoning as to disability benefits).

The creation of a new legal principle, however, is only the threshold factor in the *Chevron* analysis. We next must address the other two *Chevron* factors and balance the considerations comprehended within them in order to determine whether the rule we establish today should be applied retroactively. *Marinez*, at 556–557 nn. 3–4.

### 2.

The second *Chevron* factor requires that we weigh the merits of the retroactivity question by looking to the history of cost-of-living deductions, the purpose and effect of the rule we establish today, and whether retroactive operation of this decision will further or retard the operation of that rule.

As stated previously, the purposes of the Act are to protect employees who suffer injuries arising out of their employment and to provide to those injured workers a reliable source of compensation. *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231, 233 (Colo.1984); *Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo.1982).

Recognizing these dual purposes, we concluded in *Engelbrecht* that social security cost-of-living increases may not be deducted from workers' compensation disability benefits. *Engelbrecht*, 680 P.2d at 233. Allowing an injured worker to keep his cost-of-living increases better protects him and provides him with a more reliable source of income, especially in light of the fact that Colorado does not provide its own cost-of-living increases to periodic disability benefits to keep pace with inflation. *Id.* The cost-of-living increases simply preserve the purchasing power of the federal social security benefits. The effect of *Engelbrecht* was to rectify a longstanding misinterpretation of section 8–51–101(1)(c) by insurers that had served to detract from the statute's purpose to afford financial protection to injured workers in Colorado. The situation is no different for workers' dependents, like the petitioner, whose death benefit payments have been reduced because of an erroneous interpretation of section 8–50–103 and who must rely on the benefit payments under section 8–50–103 as a substitute for the support previously provided by the deceased worker.

Retroactive application of our decision today would further both its purpose and its effect. Previously, those dependents of deceased workers whose workers' compensation death benefits were decreased because of cost-of-living increases in federal benefits effectively were deprived of those increases deemed necessary by Congress to permit social security periodic death benefits to keep pace with inflation. Not only did Colorado elect not to provide cost-of-living increases of its own, but it in effect deprived the dependents of the deceased worker of the entire increase provided under federal law. Applying our construction of section 8–50–103 retroactively would redress that inequity and would accord to the affected dependents the full intended benefit of past cost-of-living increases to social security death benefits. Granting dependents the full benefit of the cost-of-living increases would more nearly stabilize the purchasing power of the payments and thereby promote the statutory purposes of protection of dependents of deceased em-

ployees and provision of a reliable substitute source of support, without resulting in double payments for the same death. *Cf. Marinez,* at 558–559 (employing the same reasoning as to disability benefits).

The State Fund contends, however, that a retroactive application of the construction of section 8–50–103 that we adopt in this case would undermine the planning upon which the success of the state compensation scheme rests and would jeopardize the financial stability of the insurance system. This in turn would threaten the very source of the payments that now protect injured workers and dependents of deceased workers and assure them a reliable source of income. Therefore, argues the State Fund, the purpose of the rule against deduction of cost-of-living increases in federal social security death benefits would be retarded by retroactive application of the rule of the present case.

The State Fund, however, offered no evidence to support its argument that retroactive application of our construction of section 8–50–103 would jeopardize the financial stability of the insurance system. As in *Marinez,* we have no basis, therefore, to evaluate the extent of the obligations that would result from a retroactive application or the adequacy of the reserves of insurers to meet such obligations. It is the State Fund's burden to prove its assertion that the financial stability of the insurance system is at stake. *See Jimenez v. Weinberger,* 523 F.2d 689, 704 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976); *Hurvich v. Califano,* 457 F.Supp. 760, 764 (N.D.Cal.1978). No such proof was proffered. In these circumstances we decline to give weight to the State Fund's important but undocumented assertions concerning the ability of insurers to satisfy the financial obligations that would result from applying the present case retroactively. *See Cash v. Califano,* 621 F.2d 626, 632 (4th Cir.1980); *Jimenez,* 523 F.2d at 704; *Hurvich,* 457 F.Supp. at 764. *Cf. Marinez,* at 559 (employing same reasoning as to disability benefits).

3.

We turn now to the third factor in *Chevron,* whether inequity, resulting in injustice or hardship, would follow from the retroactive application of the present case. From the perspective of dependents of deceased workers, of course, quite the contrary is the case. Until our decision today, dependents of deceased workers were wrongfully deprived of a portion of their just benefits because of an erroneous interpretation of the law by insurers. Requiring the wrongfully withheld amounts to be paid to those dependents would do no more than make them whole. *Cf. Marinez,* at 559 (employing same reasoning as to disability benefits).

We recognize, however, as the State Fund contends, that the insurance industry and state compensation system have relied on their interpretation of section 8–50–103 since cost-of-living increases to federal social security death benefits were instituted. We also recognize that practical considerations must be evaluated when determining whether to apply a decision retroactively. *Ground Water Commission v. Shanks,* 658 P.2d 847, 849 (Colo.1983); *People in the Interest of C.A.K.,* 652 P.2d at 607–609. One of these considerations is the protection of persons who have relied on the earlier state of the law. *Shanks,* 658 P.2d at 849; *People in the Interest of C.A.K.,* 652 P.2d at 608. The State Fund contends that because it relied on its interpretation of section 8–50–103 it would be harmed by a retroactive application of the present case.

Once again, however, the record is insufficient to address the State Fund's contentions. The record contains no information regarding the number of dependents who would be affected by a retroactive application, the amount of money to be paid, the size of the reserves out of which payments would be made, the degree to which insurers have relied on cost-of-living deductions, or the administrative burden of reprocessing applications. It is the State Fund's burden to prove its contention that serious adverse consequences to insurers would result from retroactive application of this case. *See Jimenez,* 523 F.2d at 704; *Hurvich,* 457 F.Supp. at 764. Absent such

proof, we cannot give credence to the State Fund's assertions. *See Cash,* 621 F.2d at 632; *Jimenez,* 523 F.2d at 704; *Hurvich,* 457 F.Supp. at 764. *Cf. Marinez,* at 559–560 (employing same reasoning as to disability benefits).

### IV.

In summary, we conclude that the present case establishes a new principle of law by resolving as a matter of first impression that under section 8–50–103, workers' compensation carriers may not deduct cost-of-living increases in social security death benefits from state periodic death benefit payments. We further conclude that the purpose and effect of this rule will be furthered by a retroactive application. No showing has been made that a retroactive application would impose inequities on insurance carriers or would jeopardize the financial stability of the workers' compensation system. Therefore, we hold that the rule in this case should be applied retroactively and that the hearing officer abused his discretion in not applying such rule to the deductions previously taken from the state death benefits paid to Wilson.

The judgment of the court of appeals is affirmed in part and reversed in part and the case is remanded to that court to be returned to the Commission for further proceedings consistent with the views expressed in this opinion.