L.E.L. CONSTRUCTION; Crested Butte South Metropolitan District; and Colorado Compensation Insurance Authority, Petitioners,

v.

Janet GOODE; Bettie Travis; the Industrial Claim Appeals Office of the State of Colorado; and Director, Division of Workers' Compensation, Respondents.

No. 92SC837.

Supreme Court of Colorado,
En Banc.

Jan. 31, 1994.

Paul Tochtrop, Michael J. Steiner, Denver, for petitioners.

Leventhal & Bogue, P.C., Bruce Kaye, Denver, for respondent Janet Goode.

Withers, Seidman & Rice, P.C., Gudrun Rice, Grand Junction, for respondent Bettie Travis.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Mary Karen Maldonado, First Asst. Atty. Gen., John D. Baird, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *L.E.L. Construction v. Goode*, 849 P.2d 876 (Colo. App.1992), which addressed two cases consolidated by the court of appeals. The court of appeals held that federal social security "mother's insurance benefits" are not "periodic death benefits" within the meaning of section 8–50–103, 3B C.R.S. (1986) (now codified with changes at section 8–42–114, 3B C.R.S. (1993 Supp.)), and therefore cannot be deducted from state workers' compensation death benefits.[1] Because federal social security mother's insurance benefits can be offset against workers' compensation death bene-

---

1. The court of appeals also held that a petition to reopen was not necessary in order to challenge the offset of one of the mother's benefits. Be-

cause we hold that the offset of the mother's benefits was proper, the second issue is moot.

fits, we reverse the court of appeals and remand with directions to return both cases to the Industrial Claim Appeals Office (ICAO) for further review consistent with this opinion.

## I

Janet Goode (Goode) and Bettie Travis (Travis) are each the surviving, dependent spouses of workers who were fatally injured in the course and scope of their employment. Both spouses are entitled to receive workers' compensation death benefits. Goode and Travis are also entitled to receive "mother's insurance benefits" under the Social Security Act because they are widows who have dependent children. 42 U.S.C. § 402(g) (1988).

On January 4, 1991, an administrative law judge (ALJ) for the Division of Labor determined that social security mother's insurance benefits could not be offset against workers' compensation death benefits paid to Travis on account of the death of her husband. On May 2, 1991, in a separate case, an ALJ for the Division of Labor determined that the Colorado Compensation Insurance Authority (CCIA) was precluded from offsetting social security mother's insurance benefits against Goode's workers' compensation death benefits. The ALJ ordered the CCIA to recalculate the social security offset from the date of death and pay Goode those benefits which were improperly withheld with interest. The findings of the ALJs allowed Travis and Goode to receive two distinct benefits as a result of the deaths of their husbands.

The Industrial Claim Appeals Office (ICAO) affirmed the order of the ALJ regarding Goode's claim. Subsequently, the ICAO entered an identical order with regard to the offset issue on Travis' claim. L.E.L. Construction, Crested Butte South Metropolitan District, and the Colorado Compensation Insurance Authority (CCIA) appealed and the court of appeals consolidated the Goode and Travis cases because both cases raised the same issues. The court of appeals affirmed the ruling of the ICAO that Goode's and Travis' social security mothers' insurance

benefits could not be offset against their workers' compensation benefits.

## II

In 1975, the Colorado Workers' Compensation Act was amended by the addition of the following language to section 8–50–103, 3B C.R.S. (1986) (now codified with changes at section 8–42–114, 3B C.R.S. (1992 Supp.)):

> In cases where it is determined that periodic death benefits granted by the federal old age, survivors, and disability insurance act are payable to an individual and his dependents, the aggregate benefits payable for death pursuant to this section shall be reduced, but not below zero, by an amount equal to one hundred percent of such federal periodic benefits.

Ch. 71, sec. 19, § 8–50–103, 1975 Colo.Sess. Laws 291, 299.

Goode and Travis assert that the General Assembly's use of the phrase "periodic death benefits" indicates its intent not to offset mother's social security benefits. The term "periodic death benefit" is not defined by the Social Security Act or by the Colorado Workers' Compensation Act. Although the term "periodic death benefits" is not defined, a review of the plain language of section 8–50–103, the legislative history of the amendment, and the relevant case law demonstrates the General Assembly intended to offset mother's social security insurance benefits.

## A

Our primary task in construing a statute is to discern the intent of the General Assembly. *See, e.g., Safeway Stores, Inc. v. Smith*, 658 P.2d 255, 259 (Colo.1983). To ascertain intent, words and phrases should be given effect according to their plain and obvious meaning. § 2–4–101, 1B C.R.S. (1980); *see also People v. District Court*, 713 P.2d 918, 921 (Colo.1986). In amending section 8–50–103, the General Assembly used the phrase "federal old age, survivors, and disability insurance act." This phrase is a specific reference to Subchapter II of the Social Security Act.[2] The General Assem-

2. Subchapter II of the Social Security Act was originally titled "Federal Old–Age Benefits." So-

cial Security Act, ch. 531, 49 Stat. 620, 622 (1935). When Congress subsequently amended

bly's use of the phrase that encompasses all survivors' benefits indicates that the General Assembly intended workers' compensation death benefits to be offset by all survivors' benefits paid to a family.

Goode and Travis assert that the General Assembly's use of the term "periodic death benefits" indicates that it did not intend to offset mother's insurance benefits. The plain language of the statute does not support their contention. Had the General Assembly intended to exclude any of the survivors' benefits from the effect of the offset, it would have so indicated.

## B

■ The legislative history of section 8–50–103 also demonstrates the intent of the General Assembly to offset mother's social security benefits. When a statute is susceptible to more than one interpretation, the statute must be construed to give effect to the legislative intent and purpose underlying the enactment. § 2–4–203, 1B C.R.S. (1980); *U.M. v. District Court,* 631 P.2d 165, 167 (Colo.1981). The purposes of the Colorado Workers' Compensation Act are to protect employees who suffer injuries arising out of their employment and to give injured workers a reliable source of compensation. *Engelbrecht v. Hartford Accident & Indem. Co.,* 680 P.2d 231, 233 (Colo.1984). The legislative history indicates that the General Assembly amended section 8–50–103 and mandated the offset of federal social security survivorship benefits in order to further these purposes.

Prior to September 1, 1975, the Colorado Workers' Compensation Act provided death benefits to dependents for a period of only six years, after which benefits ceased. § 8–50–103, 3 C.R.S. (1973). At that time, there was an offset for social security benefits in disability cases but there was no offset in death cases. § 8–51–101(1)(c), 3 C.R.S. (1973). In 1975, the General Assembly adopted the recommendation of the National Commission on Workmen's Compensation Laws (National Commission) and amended section 8–50–103 to extend workers' compensation coverage. As part of the extension of coverage, the General Assembly also adopted the National Commission's recommendation of a one-hundred percent social security death benefit offset.[3]

In 1969, the United States Congress enacted the "Williams–Steiger" Occupational Safety and Health Act (OSHA). OSHA created the National Commission on State Workmen's Compensation Laws to provide for a study of the states' workers' compensation laws. Occupational Safety and Health Act of 1970, Pub.L. No. 91–596, 84 Stat. 1590, 1616–1618 (1970). OSHA specifically charged the National Commission with determining "the relationship between workmen's compensation on the one hand, and old-age, disability, and survivors insurance ... on the other hand." *Id.* at 1617. The National Commission was directed to make recommendations to the President to allow for reform of the states' workers' compensation laws or, alternatively, to recommend federalization of workers' compensation. *Id.* Following extensive hearings, the National Commission issued a report to the President which discussed nineteen essential provisions crucial to a state's workers' compensation system.

One of the essential requirements discussed by the National Commission was lifetime benefits to a widow or widower whose spouse had died in the course and scope of employment as well as minimum weekly ben-

---

Subchapter II, the title was changed to: "Federal Old–Age and Survivors Insurance Benefits." Social Security Act, ch. 666, 53 Stat. 1362 (1939). In 1956, Congress included disability insurance benefits in the subchapter heading: "Federal Old–Age, Survivors, and Disability Benefits." Social Security Act, ch. 836, 70 Stat. 824 (1956). Subchapter II is popularly referred to as the "Federal Old Age, Survivors, and Disability Insurance Act." *See, e.g., Peterson v. Mathews,* 414 F.Supp. 1306, 1307 (D.Md.1976).

3. The impetus for the amendment to § 8–50–103 is set forth in the title of the act that amended this section: "Concerning Workmen's Compensation, and Providing Extended Coverage Necessary to Conform to Essential Recommendations of the National Commission on State Workmen's Compensation Laws...." Ch. 71, 1975 Colo. Sess.Laws 291. We have recognized that the title of legislation is relevant to the determination of legislative intent. *See City of Ouray v. Olin,* 761 P.2d 784 (Colo.1988).

efits. The National Commission also recommended a corresponding one-hundred percent offset for social security "death benefits" to compensate for the increased cost which could be incurred by a state if it provided lifetime and minimum weekly benefits. The National Commission specifically recommended that "workmen's compensation death benefits be reduced by the amount of *any* payments received from Social Security by the deceased worker's *family.* " *The Report of the National Commission on State Workmen's Compensation Laws* 73 (1972) (emphasis added).

In its report, the commission explained its reasons for recommending a one-hundred percent offset:

> Our recommendation for death benefits would substantially increase payments in many States. Such increased benefits should be coordinated with those of other programs. It is sometimes argued that workmen's compensation death benefits are not more substantial because many families qualify for benefits under the Social Security program. However, there are serious flaws in this reasoning. Families do not qualify for Social Security benefits unless the worker had sufficient quarters of covered employment. *Moreover, Social Security benefits are paid only if the surviving spouse has dependent children in her care or if the spouse is at least 60 years old.*
>
> . . . .
>
> This offset provision, in conjunction with our other recommendations for death benefits, would provide substantial protection at a lower cost to the employer than if workmen's compensation benefits were to duplicate Social Security benefits. More important, the offset would add equity to the workmen's compensation system be-

cause two families would not receive different benefits merely because only one was eligible for the Social Security benefits. Moreover, all surviving families would be assured of a continuing income of the same general magnitude, rather than being subject to wide swings in family income resulting from the in-and-out characteristics of Social Security benefits.[4]

*Id.* at 73–74 (emphasis added). This provision indicates that the National Commission specifically intended the offset to apply to mother's insurance benefits. The passage addresses mother's benefits and widow's benefits. In a hypothetical that accompanies this passage, the National Commission addresses mother's benefits, widow's benefits,[5] and children's benefits. In addition, the recommendation of the National Commission is worded—*"any"* payments received by the *"family." Id.* at 74.

The report also explains the purpose and intent of the National Commission in recommending that states offset all social security survivors' benefits. The offset provision was intended to lower the cost of providing lifetime and minimum weekly benefits; to eliminate discrepancies between families who receive both workers compensation death benefits and social security benefits and families who receive only workers compensation benefits; and to provide all families with an even stream of payments.

Because the General Assembly amended section 8–50–103 to conform the Colorado Workers' Compensation Act to the National Commission's recommendations, the National Commission's report reflects the General Assembly's intent. Thus, section 8–50–103 should be read as offsetting mother's social security benefits available under Subchapter II of the Social Security Act.

---

4. The "in-and-out" characteristic of Social Security benefits is explained by the National Commission in a hypothetical. The hypothetical notes that a widow with dependent children is eligible to receive Social Security benefits for herself and for her children while the children are minors. Once the children are no longer minors, the benefits cease until the widow reaches the age of sixty-two, at which time, if she is unmarried, she would once again begin receiving Social Security benefits.

5. *Larimer County School District v. Industrial Commission,* 727 P.2d 401 (Colo.App.), *cert. denied as improvidently granted,* 752 P.2d 80 (Colo. 1986), ruled that widow's benefits are not "periodic death benefits" pursuant to § 8–50–103. To the extent *Larimer* is inconsistent with this opinion, it is disapproved.

## C

Goode and Travis do not attempt to refute the legislative history of section 8–50–103; instead, they rely on decisions interpreting provisions of the Workers' Compensation Act.

In *Engelbrecht*, 680 P.2d at 232–33, we addressed the issue of whether cost-of-living increases in social security disability benefits are "periodic death benefits" within the meaning of subsection 8–51–101(1)(c), 3B C.R.S. (1986), therefore triggering deductions from state workers' compensation *disability* benefits. We held that the meaning of "periodic death benefits" was not plain or obvious, "primarily because the federal legislation establishing cost-of-living increases to social security benefits was not enacted until 1972, nine years after the General Assembly provided for a set-off of social security benefits from workers' compensation payments." *Engelbrecht*, 680 P.2d at 233.

Because the meaning of the term "periodic death benefits" in relation to cost-of-living increases was not readily apparent, we analyzed the cost-of-living increases in light of the purpose of subsection 8–51–101(1)(c). The purpose of this subsection is to prevent double awards, i.e., payment of the full amount of social security and workers' compensation for the same disability.[6] We concluded that the General Assembly's intent to eliminate double recovery did not require that social security cost-of-living increases be deducted from workers' compensation payments. We reasoned that the cost-of-living increase was not an additional benefit that would result in a double award, but was merely an attempt to maintain the buying power of social security payments.

In *Wilson v. Jim Snyder Drilling*, 747 P.2d 647 (Colo.1987), we considered whether cost-of-living increases in federal social security death benefits are "periodic death benefits" within the meaning of section 8–50–103. Although the decision in *Engelbrecht* was central to the decision in *Wilson*, it was not dispositive because disability benefits awarded to a worker under subsection 8–51–

101(1)(c) and death benefits awarded to a worker's dependents under section 8–50–103 are distinct and independent. *Wilson*, 747 P.2d at 650. In *Wilson*, we concluded that section 8–50–103 does not authorize the deduction of cost-of-living increases in social security benefits from workers' compensation death benefits.

Both *Engelbrecht* and *Wilson* declare that an extension of an existing social security benefit, for the purpose of maintaining the purchasing power of the original benefit, does not fall within the scope of the offsetting provisions of the Workers' Compensation Act. Neither *Engelbrecht* nor *Wilson*, however, contravenes the General Assembly's intent to adopt the National Commission's recommendation to offset one-hundred percent of all social security survivors' benefits.

It is not relevant how the individual died, or the purpose of the social security payments. What is relevant is whether the individual will receive both workers' compensation death benefits and social security survivors' benefits:

> Once it is recognized that workmen's compensation is one unit in an overall system of wage-loss protection, rather than something resembling a recovery in tort or on a private accident policy, the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed. Since most social legislation in the United States has appeared in unrelated fragments, lack of coordination resulting in cumulation of benefits is quite common; but newer legislation, including the Social Security compensation offset provision, is more carefully drawn to prevent this result.
>
> . . . .
>
> [Offsetting] is inevitable, once it is recognized that workmen's compensation, unemployment compensation, nonoccupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. If this is denied, then all coordination

---

**6.** In *Engelbrecht,* the need to resort to the broad policies underlying the Workers' Compensation Act was necessary because the more specific legislative history regarding compliance with the National Commission's recommendations does not resolve the issue of cost-of-living increases.

becomes impossible and social legislation becomes a grab-bag of assorted unrelated benefits.

4 Arthur Larson, *The Law of Workmen's Compensation* § 97.00 to 97.10 (1993); *see also Estate of Baker v. List & Clark Constr. Co.*, 222 Kan. 127, 563 P.2d 431 (1977) (upholding as constitutional a Kansas statute, which was based on the recommendations of the National Commission on State Workmen's Compensation Laws and provides for the offset of federal social security survivors' benefits against state workmen's compensation death benefits).

The offset provision in section 8–50–103 is a legislative determination to prevent a widow or widower from collecting multiple benefits. Any other result would frustrate the purposes of the coordination of benefits provision.

### III

In amending section 8–50–103, 3B C.R.S. (1986) (now codified with changes at section 8–42–114, 3B C.R.S. (1993 Supp.)), the General Assembly referred to the Federal Old Age, Survivors, and Disability Insurance Act which encompasses mother's insurance benefits. In addition, the General Assembly evidenced its intent to adopt the recommendations of the National Commission on State Workmen's Compensation Laws that all social security benefits be offset in order to prevent double recovery of benefits. Therefore, we reverse the court of appeals and return these cases with directions to remand to the Industrial Claim Appeals Office for further review consistent with this opinion.