**SPANISH PEAKS MENTAL HEALTH CENTER and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Robert HUFFAKER and Industrial Claim Appeals Office, Respondents.**

**No. 95CA1726.**

Colorado Court of Appeals, Div. V.

March 21, 1996.

Rehearing Denied May 23, 1996.

Certiorari Denied Dec. 9, 1996.

Dufford & Brown, P.C., Douglas P. Ruegsegger, Douglas A. Thomas, Denver, for Petitioners.

Gradisar, Trechter, Ripperger & Croshal, Nicholas Gradisar, Pueblo, for Respondent Robert Huffaker.

No Appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge CASEBOLT.

Petitioners, Spanish Peaks Mental Health Center and Colorado Compensation Insurance Authority, seek review of a final order of the Industrial Claim Appeals Office (Panel) that denied their claim for an offset against the permanent total disability benefit award for disability retirement benefits that claimant, Robert Huffaker, receives from the Public Employees' Retirement Association (PERA). We affirm.

The relevant facts are undisputed. At the time of his injury, claimant worked for two different employers. He worked full-time as a staff psychiatrist at the Colorado State Hospital (CSH) in Pueblo and was employed as a part-time staff psychiatrist at Spanish Peaks Mental Health Center. He earned $1,446.90 per week at CSH and $395.77 weekly at Spanish Peaks.

In May 1987, claimant was injured in the course and scope of his employment with Spanish Peaks when a mentally ill patient shot him. Spanish Peaks admitted liability for temporary disability and paid benefits based only upon claimant's wages at Spanish Peaks.

In November 1992, claimant was granted a disability retirement from the CSH and began receiving PERA disability retirement benefits in the amount of $3,387.40 per month. All of the contributions to the PERA pension fund were paid by claimant and the CSH; none were made by Spanish Peaks.

Petitioners filed a final admission of liability on April 19, 1994. They admitted that claimant was permanently and totally disabled. In determining claimant's disability benefit, petitioners for the first time calculated his average weekly wage by combining his weekly income from both CSH and Spanish Peaks. Based on these combined wages, petitioners determined that claimant's weekly workers' compensation disability benefit amount was $351.68, the statutory maximum.

However, the petitioners then claimed a statutory offset against claimant's workers' compensation benefit in the amount of $466.85 per week as a result of the benefits due claimant pursuant to his PERA retirement. Thus, if allowed, the offset would have precluded receipt of any workers' compensation benefits.

Although claimant did not object to the new calculation of the average weekly wage using the combined weekly wages, he did

object to application of the offset. After a hearing, an Administrative Law Judge (ALJ) determined that § 8–51–101(1)(d)(I), C.R.S. (1986 Repl.Vol. 3B) (now codified as § 8–42–103(1)(d)(I), C.R.S. (1995 Cum.Supp.)) permits an offset when a "pension plan" has been "financed in whole or in part by the employer." The ALJ concluded that, because Spanish Peaks did not contribute to the claimant's PERA account, it could not claim the benefit of the statutory offset. The Panel affirmed.

■ Petitioners contend that the ALJ erred in disallowing the PERA offset. We disagree.

■ In general, in the absence of a statute, a claimant may receive benefits from a pension plan and from a workers' compensation award simultaneously. *See* 4 A. Larson, *Workmen's Compensation Law* § 97.41(c) (1995). Colorado, however, has adopted such an offset statute. As applicable here that statute, § 8–51–101(1)(d), C.R.S. (1986 Repl. Vol. 3B), provided:

> In cases where it is determined that periodic disability benefits are payable to an employee under the provisions of a pension plan financed in whole or in part by the employer, hereinafter called 'Employer Pension Plan,' the aggregate benefits payable for . . . permanent total disability pursuant to this section, shall be reduced, but not below zero. . . .

That statute further provided that the reduction may be made "only in an amount proportional to the employer's percentage of total contributions to the employer pension plan." Section 8–51–101(1)(d)(I).

■ Here, the issue is whether a concurrent employer who has made no contribution to a disability plan may obtain an offset for periodic disability benefits paid under the plan against its workers' compensation permanent total disability obligation. We hold that the statutory offset is available only to an employer who has already paid the cost of the injured employee's workers' compensation insurance and has also purchased or contributed to a disability pension plan covering that employee.

■ In resolving this issue, we apply the rule that words and phrases in statutes should be given their plain and ordinary meanings, and that resort to rules of statutory construction is unnecessary if no ambiguity is present. *Snyder Oil Co. v. Embree*, 862 P.2d 259 (Colo.1993).

In our view, the language of § 8–51–101(1)(d) is clear and indicates that only pension benefits to which the employer has contributed are available to create an offset. Conversely, benefits attributable to claimant's contributions are not subject to the offset. We see *no indication in the statutory* language that the General Assembly intended to allow an offset for pension benefits to which the employer did not contribute.

Contrary to petitioners' contentions, *Myers v. State*, 162 Colo. 435, 428 P.2d 83 (1967) and *Scriven v. Industrial Commission*, 736 P.2d 414 (Colo.App.1987) support this interpretation. In *Myers*, the supreme court reviewed the predecessor to the statute at issue here. In determining the legislative intent, it stated:

> [T]he General Assembly intended to require a reduction in the workmen's compensation benefits otherwise payable to an injured employee where the employer, who has himself already paid the cost of workmen's compensation insurance has also purchased, in whole or in part, a disability pension or annuity plan for his employee. The General Assembly was of the view that an injured employee should not be permitted to receive so-called 'double' disability benefits, *i.e.*, both workmen's compensation benefits and disability annuity at the expense of the employer.

*Myers v. State, supra,* 162 Colo. at 440, 428 P.2d at 86 (1967).

As the *Myers* court noted, the prohibition on "double recovery" applies when the employer has purchased *both* of the same sources of benefits that the injured employee seeks to receive.

In *Scriven v. Industrial Commission, supra*, a division of this court noted that the intent of the offset provision is to prevent an injured employee from receiving double disability benefits, *i.e.*, workers' compensation

and disability pension, both financed by the employer. The court there held that, because both sources of benefits received by the claimant were financed by the employer, the offset was applicable.

■ The General Assembly has revisited the offset statute on several occasions since these decisions were issued without changing the statutory language relevant to this issue. When such is the case, the judicial construction previously placed upon the statute is deemed to be approved by the General Assembly. *See United States Fidelity & Guaranty, Inc. v. Kourlis,* 868 P.2d 1158 (Colo. App.1994).

Nor are we persuaded otherwise by petitioners' reliance on *St. Mary's Church & Mission v. Industrial Commission,* 735 P.2d 902 (Colo.App.1986) and *Jefferson County Public Schools v. Dragoo,* 765 P.2d 636 (Colo. App.1988). Those cases involved the calculation of a claimant's average weekly wage. Unlike the offset provision here, that statute contained equitable and discretionary criteria which allowed an ALJ to include the wages of multiple concurrent employers in computing the average weekly wage.

Here, petitioners unilaterally chose to include claimant's wages from CSH in calculating his wages for purposes of workers' compensation payments, apparently for the sole purpose of arguing that the offset would therefore be applicable. Hence, the cited cases are inapposite.

In so concluding, we reject petitioners' contention that they are entitled to "share" the offset here. Essentially, petitioners claim that, because the singular generally includes the plural in statutory construction, *see* § 2–4–102, C.R.S. (1980 Repl.Vol. 1B), the term "employer" in the statute should be read to mean "employers." However, because we hold that the offset is applicable only for an employer who has contributed to both sources of payments, even if we were to accept petitioners' contention, they would only be entitled to an offset if *they* contributed to those sources. Hence, because it is acknowledged that no contributions were made by Spanish Peaks, it follows that no offset is available.

Further, we are not persuaded by petitioners' argument that the supreme court's holding in *L.E.L. Construction v. Goode,* 867 P.2d 875 (Colo.1994) requires a different result. In *Goode,* a different statutory offset was being construed. The court relied on the plain language of that particular offset, its legislative history, and general public policy considerations to determine that the language of former § 8–51–103, C.R.S. (1986 Repl.Vol. 3B) (now codified as § 8–42–114, C.R.S. (1995 Cum.Supp.)) required an offset for all federal social security death benefits against state workers' compensation death benefits. Thus, that case is distinguishable.

Moreover, the *Goode* court quoted with approval the public policy set forth in 4 A. Larson, *Workmen's Compensation Law* §§ 96.00–97.20 (1995) that workers' compensation statutory benefits generally should be coordinated with other legislated social welfare wage loss benefits, *i.e.,* unemployment and federal disability benefits, to prevent a double recovery for one wage loss from one injury. Unlike *Goode,* the statutory offset at issue here does not invoke the need for coordination of two social welfare wage loss benefit statutes, *e.g.,* state and federal death or disability benefit statutes. Rather, this statutory offset concerns only the General Assembly's attempt to define the circumstances in which employer-paid disability pension benefits should be offset against workers' compensation benefits funded by the same employer. Thus, the reasoning in *Goode* is not applicable here.

Nor, contrary to petitioners' argument, is *Jefferson County Public Schools v. Sago,* 786 P.2d 486 (Colo.App.1989) applicable here. There, the applicability of the statutory offset for PERA benefits was not an issue. Since that claimant was entitled to receive both workers' compensation benefits from Jefferson County Public Schools and disability benefits from PERA that had been funded by Jefferson County Public Schools, the offset provision had been triggered.

Thus, the issue was not whether the offset was applicable, but the manner in which the offset would be applied. The court determined that, once the offset was applicable, the Subsequent Injury Fund was entitled to

benefit from it. Here, however, the issue is whether the offset is applicable in the first instance. *Sago* provides no guidance on this issue.

Finally, despite petitioners' argument, we are not persuaded that equitable considerations warrant a different interpretation of the statute. In order to compensate a claimant most fairly for his or her wage loss, employers in the position of Spanish Peaks *may* be required to pay temporary total or permanent total disability benefits based upon earnings which the claimant received from other employers. *See St. Mary's Church & Mission v. Industrial Commission, supra.* However, employers in the position of Spanish Peaks do not contribute to the pension benefits received by the claimant from the other employers. Hence, they should not benefit from the claimant's receipt of those benefits.

Accordingly, the Panel's order is affirmed.

ROTHENBERG and TAUBMAN, JJ., concur.