James B. HARRIS, Plaintiff–Appellant,

v.

THE ARK, Defendant–Appellee.

No. 90SA137.

Supreme Court of Colorado,
En Banc.

May 6, 1991.

Hall & Evans, Alan Epstein, Christine
Van Coney, Malcolm S. Mead, Denver, Ken-

neth Dressner, Colorado Springs, for plaintiff-appellant.

Retherford, Mullen, Rector & Johnson, Neil C. Bruce, Colorado Springs, for defendant-appellee.

Justice QUINN delivered the Opinion of the Court.

The question in this case is whether section 13–21–111.7, 6A C.R.S. (1987), which defines assumption of risk as the voluntary or unreasonable exposure to injury or damage with knowledge or appreciation of the danger or risk and which requires the trier of fact to consider a plaintiff's assumption of risk in apportioning the degree of negligence between the plaintiff and the defendant in a tort action for damages, violates equal protection of the laws and due process of law under the United States and Colorado Constitutions. The trial court upheld the constitutionality of the statute, and we affirm the judgment.[1]

## I.

In 1971 the General Assembly enacted a comparative negligence statute for ascertaining liability and damages in negligence cases. Ch. 125, sec. 1–3, 1971 Colo.Sess. Laws 496–97. This statutory scheme provides that the contributory negligence of a plaintiff shall not bar recovery in any action for negligence resulting in death or injury to persons or property as long as such contributory negligence "was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made." § 13–21–111(1), 6A C.R.S. (1987). In an action tried to a jury, the statute requires the jury to return a special verdict stating the amount of damages that would have been recoverable if there had been no contributory negligence and the degree of negligence of each party, expressed as a percentage. § 13–21–111(2)(a) & (b), 6A C.R.S. (1987). The trial court is then required to

reduce the amount of the verdict in proportion to the amount of negligence attributable to the plaintiff, and, if the plaintiff's negligence is equal to or greater than the negligence of the defendant, the court must enter a judgment for the defendant. § 13–21–111(3), 6A C.R.S. (1987). The statutory scheme, as initially enacted, was silent on whether the affirmative defense of assumption of risk was to be considered a form of contributory negligence. In 1986, the General Assembly enacted section 13–21–111.7, 6A C.R.S. (1986), which states:

Assumption of a risk by a person shall be considered by the trier of fact in apportioning negligence pursuant to section 13–21–111. For the purposes of this section, a person assumes the risk of injury or damage if he voluntarily or unreasonably exposes himself to injury or damage with knowledge or appreciation of the danger and risk involved. In any trial to a jury in which the defense of assumption of risk is an issue for determination by the jury, the court shall instruct the jury on the elements as described in this section.

This statute became effective on July 1, 1986, and was made applicable to "civil actions commenced on or after said date." Ch. 107, sec. 6, 1986 Colo.Sess.Laws 677, 679.

On the morning of February 10, 1986, the plaintiff, James B. Harris (Harris), a plumber employed by Davis Plumbing & Heating, slipped and fell on a snow-covered walkway while working on the premises of the defendant, The Ark, a chemical dependency treatment center located in Green Mountain Falls, Colorado. Harris filed a negligence action in the district court on March 2, 1987, and named The Ark as defendant. In his complaint Harris alleged that The Ark was negligent in permitting a known unsafe condition to exist on the premises and that The Ark's negligence caused his injuries and damages. The Ark denied Harris's allegation of negligence and alleged, as an affirmative defense, that Harris's injuries were caused by his own

---

1. Because Harris challenges the constitutionality of a statute, appellate jurisdiction over this appeal is in this court. § 13–4–102(1)(b), 6A C.R.S. (1987).

negligence. The case was tried to a jury on October 30, 1989.

The evidence at trial established that on the night prior to the accident a snowstorm had covered some of the walkways on The Ark's premises with two or three inches of snow. On the morning of the accident, Harris, who had been working in one of The Ark's buildings, was told that there was a heating problem in another building on the premises. Harris picked up a large propane torch and walked to the other building, where he relit the boiler. Although Harris was aware of several available return routes to the building where he previously had been working, he decided to take an icy and snow-covered walkway connecting the two buildings because it was shorter than the other available routes. While on the walkway, Harris slipped and fell on some steps and sustained injuries to his head and spine.

At the conclusion of the evidence, the trial court instructed the jury that negligence "means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect himself or others from bodily injury." In addition, the court instructed the jury that the owner of the premises has a duty to use reasonable care to maintain the premises in a reasonably safe condition and that a person who takes a particular route when that person knows or should know of a safer route is negligent "if a reasonably careful person would have taken the safer way under the same or similar circumstances." The court also gave the following instruction on assumption of risk, over Harris's objection:

> A person assumes the risk of injury if he voluntarily or unreasonably exposes himself to injury with knowledge or appreciation of the danger and risk involved. Assumption of a risk by a person shall be considered by you in any apportionment of negligence which you make.

The jury returned a special verdict finding Harris fifty-six percent negligent and The Ark forty-four percent negligent. Because Harris's negligence exceeded The Ark's negligence, the trial court entered judgment for The Ark. Harris thereafter filed a motion for a new trial in which he challenged the constitutionality of section 13–21–111.7, 6A C.R.S. (1987), on which the trial court relied in instructing the jury. The trial court rejected Harris's claim, and this appeal followed.

## II.

Harris argues that section 13–21–111.7 violates his right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and article II, section 25 of the Colorado Constitution.[2] His basic contention is that the language of the statute, which attributes assumption of risk to a person who "voluntarily or unreasonably exposes himself to injury or damage with knowledge or appreciation of the danger and risk involved," allows the jury to find negligence on the part of a plaintiff when the plaintiff's conduct was voluntary but not necessarily unreasonable while, in contrast, the jury is permitted to find negligence on the part of a defendant only if the defendant's conduct was unreasonable. We are unpersuaded by this argument.

## A.

Equal protection of the laws guarantees that persons who are similarly situated will receive like treatment by the law. *E.g., New York City Transit Authority v. Beazer,* 440 U.S. 568, 587–88, 99 S.Ct. 1355, 1366–67, 59 L.Ed.2d 587 (1979); *J.T. v. O'Rourke,* 651 P.2d 407, 413 (Colo. 1982). The level of judicial scrutiny in an equal protection challenge varies with the character of the classification and the nature of the right affected. Where the statutory classification does not infringe on a

2. The constitutional guarantee of equal protection of the laws is included with the Due Process Clause of Article II, section 25 of the Colorado Constitution. *E.g., J.T. v. O'Rourke,* 651 P.2d 407, 413 (Colo.1982); *Heninger v. Charnes,* 200 Colo. 194, 197 n. 3, 613 P.2d 884, 886 n. 3 (1980).

fundamental right or adversely affect a suspect class—such as one based on race or national origin—or does not establish a classification triggering an intermediate level of scrutiny—such as classifications based on illegitimacy or gender—a rational basis standard of review is the controlling legal norm in resolving an equal protection challenge. *E.g., San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973); *Branson v. City and County of Denver,* 707 P.2d 338, 340 (Colo.1985). Under the traditional or rational basis standard of review, a statute that treats classes of persons differently will be upheld so long as the classification has a reasonable basis in fact—that is, the classification is based on differences that are real and not illusory—and is reasonably related to a legitimate governmental interest. *E.g., Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 762, 15 L.Ed.2d 620 (1966); *Tassian v. People,* 731 P.2d 672, 675 (Colo.1987); *Hurricane v. Kanover, Ltd.,* 651 P.2d 1218, 1222 (Colo.1982). A presumption of constitutionality attaches to a classification analyzed under the rational basis standard of review, and the challenging party must prove its unconstitutionality beyond a reasonable doubt. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Bath v. Colorado Department of Revenue,* 758 P.2d 1381, 1386 (Colo.1988); *Branson,* 707 P.2d at 340.

■ "[I]n order to subject a law to any form of judicial review under the equal protection guarantee, one must be able to demonstrate that the law classifies persons in some manner." J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 600 (2d ed. 1983). A threshold question in an equal protection challenge, therefore, is whether the classes created by a statute are similarly situated but nonetheless are subjected to disparate treatment. *Beazer,* 440 U.S. at 587–88, 99 S.Ct. at 1366–67; *Board of County Commissioners of Saguache County v. Flickinger,* 687 P.2d 975, 982 (Colo.1984). If the statutory classes are similarly situated and are treated alike, there is no equal protection problem. *E.g., Bath,* 758 P.2d at 1385; *People in the Interest of C.B.,* 740 P.2d 11, 17 (Colo. 1987).

Under the comparative negligence statutory scheme, plaintiffs and defendants are not similarly situated in relation to the legal criteria for allocating comparative fault and ultimate liability between the parties. The plaintiff in a comparative negligence action seeks to recover a money judgment against a defendant as compensation for injuries or damages caused by the defendant's negligence, while the defendant seeks to avoid liability by refuting the plaintiff's claim of negligence or by establishing that, even if the defendant may have been negligent, the plaintiff's negligence was equal to or greater than the negligence of the defendant and is thus barred from recovery.

Nor are plaintiffs and defendants treated alike under the comparative negligence system. Section 13–21–111.7, for purposes of the comparative negligence calculus, defines assumption of risk in terms of either a plaintiff's unreasonable exposure to a known risk or a plaintiff's voluntary but not necessarily unreasonable exposure to such risk, while under the same statutory scheme only the defendant's unreasonable conduct can be considered in the determination of comparative negligence.[3] The question thus becomes whether the disparate treatment accorded to plaintiffs and defendants by Colorado's comparative negligence system satisfies both prongs of the

**3.** Harris insists that the legislature inadvertently used the word "or" in defining assumption of risk as the voluntary or unreasonable exposure to a known risk when the word "and" was actually intended. We cannot attribute such intent to the legislature in the absence of anything but a totally unsupported assertion.

Moreover, if such had been the legislative intent, there would have been no purpose in enacting section 13–21–111.7 at all, since "voluntary and unreasonable" conduct was clearly encompassed within the concept of contributory negligence.

rational basis standard of equal protection analysis.

### B.

■ The first requirement under the rational basis standard of review is that there be a rational basis in fact for the statutory classification. We are satisfied that there are sufficiently genuine differences between plaintiffs and defendants to satisfy this component of equal protection analysis.

The legislative decision to treat plaintiffs and defendants differently with respect to the legal components of contributory negligence reflects realistic differences of long-standing duration in our legal system for allocating tort liability. The common law traditionally has attributed different consequences to negligent conduct on the basis of a party's status as either a plaintiff or a defendant in a lawsuit. Prior to the enactment of the comparative negligence statute, for example, Colorado law precluded a plaintiff from recovering on a negligence claim when the plaintiff was guilty of some negligence, however slight, which contributed to the plaintiff's injuries or damages, even though such contributory negligence was substantially less than the negligence of the defendant. *E.g., Boulder Valley Coal Co. v. Jernberg*, 118 Colo. 486, 490, 197 P.2d 155, 156 (1948); *Colorado and Southern Railway Co. v. Reynolds*, 51 Colo. 231, 234, 116 P. 1043, 1044 (1911). A plaintiff's assumption of a known risk also was a complete bar to a plaintiff's recovery

of damages even when the defendant's negligence was of the wilful and wanton variety. *E.g., Parker v. Foxworthy*, 154 Colo. 455, 459–60, 391 P.2d 358, 360 (1964); *Myers v. Myers*, 151 Colo. 8, 10–11, 375 P.2d 525, 526–27 (1962).[4]

The present statutory scheme preserves some but not all of the differences in the law preexisting the enactment of the comparative negligence statute. The plaintiff's contributory negligence still remains an affirmative defense to a negligence claim, as it was under preexisting law, but does not prevent a plaintiff from obtaining a judgment as long as the plaintiff's contributory negligence does not equal or exceed the negligence of the defendant. Similarly, a plaintiff's assumption of a known risk still remains an affirmative defense, as it was under the case law predating the comparative negligence system, but does not constitute an absolute bar to a plaintiff's negligence claim.

By defining assumption of risk in disjunctive terms of "voluntary" or "unreasonable" conduct, section 13–21–111.7 includes within the definition a plaintiff's voluntary but not necessarily unreasonable, as well as a plaintiff's unreasonable, exposure to a known danger. This expansive definition of assumption of risk incorporates two different views of assumption of risk reflected in Colorado case law which preexisted the statute. One line of cases viewed assumption of risk as a form of conduct involving knowledge and appreciation of a

---

4. The different legal consequences attributable to certain forms of conduct on the basis of a party's status as either plaintiff or defendant is also reflected in other Colorado decisional and statutory law in the negligence area. For example, the common-law duty of care owed by a defendant-landowner to a plaintiff varied with the plaintiff's status as a trespasser, a licensee, or an invitee. *E.g., Kenney v. Grice*, 171 Colo. 185, 188–89, 465 P.2d 401, 403 (1970). A recently enacted variant of this approach can be found in section 13–21–115, 6A C.R.S. (1990 Supp.). Colorado case law also recognizes the rule of *res ipsa loquitur*, which creates a rebuttable presumption of a defendant's negligence upon proof of the following factors: that the injury-causing event does not ordinarily occur in the absence of negligence, that non-negligent causes have been sufficiently eliminated by the evi-

dence, that the instrumentality causing the injury was within the exclusive control of the defendant, and that the plaintiff was free from any contributory negligence. *See Branco Eastern Co., Inc. v. Leffler*, 173 Colo. 428, 435–36, 482 P.2d 364, 366–67 (1971). The enactment of the comparative negligence statute in 1971 effectively eliminated the last element, the absence of any contributory negligence on the part of the plaintiff, from the *res ipsa loquitur* rule. *Montgomery Elevator Co. v. Gordon*, 619 P.2d 66, 70 (Colo.1980). Finally, by way of example, a rebuttable presumption exists that a skier, who later may become a plaintiff, is negligent in colliding with another skier or object. *See Pizza v. Wolf Creek Ski Development Corp.*, 711 P.2d 671, 679 (Colo.1985) (construing section 33–44–109(2), 14 C.R.S. (1984)).

danger, whether or not accompanied by negligence on the part of the plaintiff. *E.g., Summit County Development Corp. v. Bagnoli,* 166 Colo. 27, 33–35, 441 P.2d 658, 661–62 (1968); *Mathias v. Denver Union Terminal Railway Co.,* 137 Colo. 224, 230, 323 P.2d 624, 627–28 (1958). The emphasis here was on the plaintiff's consent, whether express or implied by conduct, to take his own chances by voluntarily encountering a known risk that he had the opportunity to avoid. Another line of cases explained assumption of risk in terms of a voluntary *and* unreasonable exposure to a known risk with knowledge or appreciation of the danger. *E.g., Ferguson v. Gardner,* 191 Colo. 527, 531, 554 P.2d 293, 296 (1976); *Wilson v. Hill,* 103 Colo. 409, 412–13, 86 P.2d 1084, 1086–87 (1939). The concept of assumption of risk in this context emphasized the unreasonableness of the plaintiff's conduct in exposing himself to a risk of injury, as, for example, when the plaintiff accepted a risk that was grossly disproportionate to the interest which the plaintiff was seeking to advance. In *Applehans v. Kirkwood,* 148 Colo. 92, 99, 365 P.2d 233, 237 (1961), this court recognized the overlapping nature of contributory negligence and assumption of risk in these two contexts when it stated:

In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be. The two may coexist, or either may exist without the other. The difference is frequently one between risks which were in fact known to the plaintiff, or so obvious that he must be taken to have known of them, and risks which he merely might have discovered by the exercise of ordinary care.

(quoting Prosser On Torts § 305 (2nd ed. 1955)).[5]

It was within the prerogative of the legislature to codify the two variants of assumption of risk into one statutory definition. This statutory definition, in our view, is based on the long-standing legal principle that there are significant differences between plaintiffs and defendants such that different legal consequences may be attributed to their respective conduct solely on the basis of their status as either plaintiff or defendant in a negligence action. Section 13–21–111.7, therefore, satisfies the

5. The term "assumption of risk" also has been used in the sense of describing "risks that are incidental to a relationship of free association between plaintiff and defendant, that is to say, one that either is at liberty to take or leave as he will":

In such a case defendant's duty toward plaintiff is traditionally thought to be limited. According to that tradition, the duty does not extend to the use of care to make the conditions of the relationship reasonably safe—at most the duty is one of care to make these conditions as safe as they appear to be and it may fall short of that. If these risks are fully comprehended, or perfectly obvious, or of the kind that plaintiff and not defendant must look out for, then, it was said, plaintiff will be held to have assumed them by voluntarily entering into the relationship that entails them. Thus if one borrows another's automobile for one's own purposes, knowing that the tires are worn smooth and the brakes in bad order, the borrower has traditionally been deemed to assume the ordinary risks of smooth tires and bad brakes; indeed, it was traditionally held that the borrower even as-

sumes the risks of concealed defects in the car provided the owner does not himself know of them. Or if one has a gratuitous permission to use the path across another's land, it was the traditional view that he takes it as he finds it and cannot expect the owner to make or keep it safe for him.
4 F. Harper, F. James, Jr., & O. Gray, The Law of Torts § 21.1 at 199–201 (2d ed. 1986) (footnotes omitted). It has been said that the concept of assumption of risk, when used in this so-called "primary sense," is not applicable to a situation where the defendant has breached a duty to the plaintiff. When, for example, a plaintiff chooses a public way that is unsafe and in need of repair but not closed, "[t]he existence of a safer alternative may make the plaintiff's choice of [the unsafe way] an unreasonable, hence negligent, choice," but "it does not bar plaintiff's recovery merely because he voluntarily chose the more dangerous way." *Id.* at 204–5. This theoretical discussion of the "primary" sense of assumption of risk merely points out that there are secondary meanings also, as reflected in Colorado case law and as encompassed by the statutory definition of assumption of risk in section 13–21–111.7.

"rational basis in fact" standard of equal protection analysis.

### C.

The second requirement under the rational basis standard is that the statutory classification bear a reasonable relationship to a legitimate governmental interest. We are satisfied that section 13–21–111.7 satisfies that requirement.

The state has a legitimate interest in establishing the elements of tort liability and the standards by which allocation of legal fault between plaintiffs and defendants is to be determined. *Gallegos v. Phipps*, 779 P.2d 856, 861 (Colo.1989). Indeed, it was to ameliorate the preclusive effects of the common law defense of contributory negligence and assumption of risk that the legislature enacted the comparative negligence statute in 1971. *See Heafer v. Denver–Boulder Bus Co.*, 176 Colo. 157, 159, 489 P.2d 315, 316 (1971).

Prior to the enactment of section 13–21–111.7 in 1986, it was not definitively settled whether a plaintiff's assumption of risk was a variant of contributory negligence for purposes of the comparative negligence statute. In *Brown v. Kreuser*, 38 Colo. App. 554, 557, 560 P.2d 105, 108 (1977), for example, the court of appeals acknowledged that "[t]he status of assumption of risk under comparative negligence has not been addressed by the legislature of Colorado or by prior judicial decision." After noting that several Colorado cases had previously classified assumption of risk as a form of contributory negligence, the court of appeals held that "the doctrine of assumption of risk should be treated under

comparative negligence in the same manner as other negligent conduct by a plaintiff" and that, consequently, jury instructions on determining "comparative negligence percentages of the plaintiff and defendant ... sufficiently cover the conduct heretofore classed as assumption of risk in Colorado, and no separate instructions on this issue should be given." *Brown*, 38 Colo.App. at 558, 560 P.2d at 108.[6]

One of the obvious and certainly legitimate purposes of section 13–21–111.7 is to make clear that both the voluntary and the unreasonable exposure to a known danger are species of assumption of risk under the comparative negligence statutory scheme in Colorado.[7] Section 13–21–111.7, therefore, clearly satisfies the second prong of equal protection analysis under the rational basis standard of review.

### III.

Harris next argues that section 13–21–111.7 violates due process of law because the statutory definition of assumption of risk is unconstitutionally vague. We need not labor long over this argument, as we find it totally lacking of merit.

A statute is unconstitutionally vague if it fails to provide a fair warning of the conduct encompassed by its terms or the conduct is so ill-defined as to create a danger of arbitrary and capricious enforcement. *E.g., Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Eckley v. Colorado Real Estate Commission*, 752 P.2d 68, 73 (Colo.1988); *Kibler v. State*, 718 P.2d 531, 534 (Colo.1986). Section 13–21–

---

**6.** To the extent that *Brown* limited the concept of assumption of risk to negligent conduct only, section 13–21–111.7 effectively overrules that decision.

**7.** Because section 13–21–111.7 was enacted as part of general tort reform legislation, Harris argues that the primary purpose of section 13–21–111.7 was to protect the insurability of businesses such as ski resorts and dude ranches. Whether Harris is correct in that assumption is of no consequence. What his argument overlooks is that a statute may have multiple purposes, and so long as there is "any state of facts that reasonably may be conceived to justify the

distinction between classes," a statutory classification will survive equal protection analysis under the rational basis standard of review. *Bushnell v. Sapp*, 194 Colo. 273, 280, 571 P.2d 1100, 1105 (1977). As discussed in the text, one of the obvious purposes of section 13–21–111.7 was to make clear that the voluntary assumption of a known risk was a variant of contributory negligence for purposes of tort liability under the comparative negligence statutory scheme. This purpose, independently of any others, qualified as a legitimate governmental interest in clarifying legal rules relating to tort liability. *Gallegos v. Phipps*, 779 P.2d 856, 861 (Colo.1989).

111.7 defines the term "assumption of risk" in language that gives clear notice of the conduct encompassed within the term—that is, the voluntary or unreasonable exposure to injury or damage with knowledge or appreciation of the danger and risk involved—and provides meaningful guidance to courts and juries in resolving issues of liability and damages by directing them to factor the plaintiff's assumption of risk into the comparative negligence calculus.

The judgment of the district court is accordingly affirmed.