ACADEMY OF CHARTER SCHOOLS, a charter school, Academy of Charter Schools Association, a voluntary association, Wanda Barnes, John Kircher, Mindie Knowles, Eric Sanderson, Brenda Soucie, Philip Winkler, and Evalee Winkler, Plaintiffs–Appellants,

v.

ADAMS COUNTY SCHOOL DISTRICT NO. 12, and Board of Education, Adams County School District No. 12, Defendants–Appellees.

No. 97CA2177.

Colorado Court of Appeals,
Div. A.

May 13, 1999.

Rehearing Denied June 17, 1999.

Certiorari Granted March 13, 2000.

Law Office of Shawn D. Mitchell, Shawn D. Mitchell, Broomfield, Colorado, for Plaintiffs–Appellants.

Semple, Miller, DeLay & Mooney, P.C., Patrick B. Mooney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROY.

Plaintiffs, the Academy of Charter Schools Association (the Association) and seven individuals commenced this action against the Adams County School District No. 12 Board of Education (Board of Education), and Adams County School District No. 12 (the District), seeking to enforce the terms of a charter school contract entered into pursuant to the Charter Schools Act (the Act), § 22–30.5–101, et seq., C.R.S.1998. In addition, plaintiffs asserted a claim pursuant to 42 U.S.C. §§ 1983 and 1988 (1994), alleging a denial of equal protection with regard to the Board of Education prohibiting members of the governing board of the Association from being hired as teachers at the Academy of Charter Schools (Academy). Plaintiffs appeal the dismissal of their complaint. We affirm in part, reverse in part; and remand for further proceedings.

Because the complaint was dismissed on a motion pursuant to C.R.C.P. 12(b)(5), the facts alleged in the amended complaint must be taken as true and must be viewed in the light most favorable to plaintiffs. *Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909 (Colo.1996).

On September 12, 1994, the Board of Education approved an application establishing

the Academy as a charter school for a period of three years. The District then entered into a charter contract with the Association which, *inter alia*, required the District to provide the Academy with funding on a per-capita basis equal to that provided the regular public schools within the district. In order to assist with start-up expenses, the charter contract required the District to fund the Academy in the amount of 100% of the Academy's per-pupil operating revenue in cash, with additional assistance equal to 20% of in-kind services to the extent the school district could do so within its existing resources. After the first year of operation, the District was to fund the Academy at the rate of 80% of the per-pupil operating revenue in cash and the remaining 20% in services, subject to availability.

During the first year of operation, the Academy requested that the District provide various services customarily provided to other schools but the requests were denied on the announced grounds that the services could not be provided within the existing resources of the District. Allegedly, the District also intervened in the Academy's hiring, contracting, and site location decisions and improperly retained state and federal funds payable to the Academy under the charter contract.

Thereafter, the Association and the District entered into unsuccessful discussions to resolve these issues. The Association appealed to the State Board of Education (State Board), which declined to intervene, stating that it did not have either jurisdiction or enforcement powers over disputes arising under the charter contract. The State Board further opined that the Association's remedy was to file an action in district court.

After the District refused a request for mediation, this action was commenced. Concluding that the Act does not grant charter schools authority to sue and, alternatively, that charter schools are subordinate political bodies and may not sue their districts which are superior political bodies, the trial court granted defendants' motion to dismiss. The trial court also concluded that the dispute resolution provisions of the charter contract precluded legal actions, that the Association,

the Academy, and the individual plaintiffs had no standing or common law right to seek declaratory relief, and that plaintiffs failed to state a cognizable equal protection claim. This appeal followed.

## I.

Plaintiffs first contend that the trial court erred in determining that the power to negotiate and enter into contracts granted to charter schools by the Act does not implicitly include the power to enforce the contract with the District. We disagree and conclude that any implicit authority to sue arising out of the power to negotiate and contract does not include the power or authority to sue the District because it is the superior governmental body.

## A.

■ A school district is a political subdivision of the state possessing only those powers expressly or implicitly conferred upon it by the General Assembly. *Board of County Commissioners v. Love*, 172 Colo. 121, 470 P.2d 861 (1970).

■ Without a plain and unmistakable expression of legislative intent to the contrary, a subordinate agency may not litigate against a superior agency. *Romer v. Fountain Sanitation District*, 898 P.2d 37 (Colo.1995).

■ Our examination of the Act leads us to conclude that the General Assembly has not granted express authority to a charter school to sue its host school district nor do we find any implicit authority for such a suit. Rather, the General Assembly expressed its unambiguous intent that a charter school is a part of the school district that grants its charter. *See* §§ 22–30.5–104(1), 22–30.5–104(2), and 22–30.5–108(5), C.R.S.1998.

Section 22–30.5–102(3), C.R.S.1998, provides:

In authorizing charter schools, it is the intent of the general assembly to create a legitimate avenue for parents, teachers, and community members to take responsible risks and create new, innovative, and more flexible ways of educating all chil-

dren *within the public school system.* (emphasis added)

To carry out the purposes of the Act, its provisions are to be liberally construed to support the findings, intent, and purposes of the General Assembly to advance a renewed commitment by the State of Colorado to the mission, goals, and diversity of *public education.* Section 22–30.5–102(3). Consistent with those announced purposes and intent, the Act provides that a charter school is a *public,* nonsectarian, nonreligious, non-home-based school which operates within a school district. Section 22–30.5–104(1), C.R.S.1998. A charter school is accountable to the board of education for purposes of ensuring compliance with applicable laws and charter provisions. Section 22–30.5–104(2), C.R.S.1998.

To establish a charter school, an application, which takes the form of a contract, must be submitted to, and approved by, the board of education of the host school district. Section 22–30.5–106(1), C.R.S.1998. The charter school and the host school district are to agree upon the funding and services to be provided to the charter school by the school district. Section 22–30.5–112(2), C.R.S.1998.

While a charter school may exercise a considerable degree of autonomy, it is to be administered and governed in a manner agreed upon between the charter school applicant and the board of education. Section 22–30.5–104(4), C.R.S.1998. In addition, if the contract so provides, a charter school may operate free from any local school district policy or state regulation. And, any charter school is responsible for its own operations including, but not limited to, preparation of a budget, contracting for services, and personnel matters. Section 22–30.5–104(7)(a), C.R.S.1998.

In addition, it is apparent that a board of education remains accountable to its electorate and to the supervising and accrediting agencies for the operation and performance of all schools within its district, including the charter schools.

Section 22–30.5–108, C.R.S.1998, sets forth an appellate process by which a charter school, or any other person, may appeal to the State Board a grant, denial, refusal to renew, or revocation of a school charter or the unilateral imposition of conditions that are unacceptable to the charter school and the State Board. Any decisions of the State Board in regard to such an appeal are final and not subject to further appeal. Section 22–30.5–108(3)(d), C.R.S.1998. Further, the statute is not to be construed to alter the fact that a charter school is a part of the host school district that grants its charter and is accountable to the local board of education pursuant to § 22–30.5–104(2), C.R.S.1998. Section 22–30.5–108(5), C.R.S.1998.

Accordingly, we conclude that neither the Association nor the Academy has the authority to sue the District under the provisions of the Act.

### B.

■ Plaintiffs further argue that the General Assembly confirmed the Association's authority to enforce contracts by amending the Act to authorize charter schools to organize as non-profit corporations, *see* § 22–30.5–104(4), C.R.S.1998, which have express authority to sue and be sued under § 7–123–102(1)(a), C.R.S.1998. We are not persuaded.

Unincorporated associations can, under appropriate circumstances, bring litigation in their own names and for their own benefit. *Hidden Lake Development Co. v. District Court,* 183 Colo. 168, 515 P.2d 632 (1973); *see also* § 7–30–107, C.R.S.1998. It is not the lack of capacity to sue that limits the Association's access to the courts to resolve disputes with, and enforce its contract with, the host school district. Rather, it is its subordinate relationship.

In addition, the Act provides that the fact that the charter school organizes itself as a non-profit corporation will not affect its status as a public school for any purposes under Colorado law. Section 22–30.5–105(4), C.R.S. 1998. Therefore, the ability to organize as a non-profit corporation does not affect our decision.

### C.

Finally, plaintiffs assert that because the State Board concluded that the Academy's remedy lay in district court, we should defer to its interpretation of the Act and permit plaintiffs to litigate their dispute with the Board of Education. We decline to do so.

While the State Board's interpretation of the statutes it is responsible to administer, or which confer upon it jurisdiction to act, is entitled to considerable weight, its lack of jurisdiction does not confer jurisdiction on the courts or extend standing to plaintiffs. *See Huddleston v. Grand County Board of Equalization,* 913 P.2d 15, 17 (Colo.1996) (recognizing that "judicial deference is appropriate when the statute before the court is subject to different reasonable interpretations and the issue comes within the administrative agency's special expertise"). Likewise, the suggestion of the State Board that plaintiffs must seek redress in the courts does not confer standing when none otherwise existed.

Having so concluded, we need not address the impact, if any, of the provision of the charter contract limiting the Association's access to the courts to resolve disputes with the District.

Accordingly, we affirm the district court's dismissal of plaintiffs' breach of contract, breach of covenant of good faith, and declaratory judgment claims for a lack of standing.

### II.

Plaintiffs next argue that the trial court erroneously determined that the Association lacked the authority and standing to enforce, as a third party, the charter contract for the benefit of the Academy. The crux of plaintiffs' argument is that the Association and the District contracted for the benefit of the Academy. As such, plaintiffs claim that the Association has standing to enforce the charter contract on behalf of the intended beneficiary, the Academy. We disagree.

In dismissing plaintiffs' third-party contract claim, the trial court. observed that: "Pursuant to § 22–30.5–102, C.R.S. the Charter Schools Act was enacted to provide diverse and innovative approaches to education for the benefit of school children." Thus, the court concluded that the Association could not sue on behalf of the Academy as a third-party beneficiary because the intended beneficiaries of the charter contract are the school children, not the Academy.

Further, the trial court held that the Association was a party to the contract. Therefore, the trial court concluded that the Association cannot bring a third-party claim to enforce the contract on behalf of the Academy because the Academy cannot be a party and a third-party beneficiary at the same time.

The issue presented by third-party beneficiary contracts with respect to their enforcement is whether the third-party beneficiary can enforce the contract, not whether parties to the contract can enforce it for the benefit of a third-party beneficiary. Further, from a legal point of view, based upon this record, the Academy is the Association and has no legal existence separate and apart from the Association. Thus, we agree with the trial court's dismissal of this claim.

### III.

Plaintiffs finally contend that the District's prohibition against members of the Board of the Association from being employed by the Association was enforced only against the Association and no other charter schools within the district. Consequently, they argue that the trial court improperly dismissed their claims under 42 U.S.C. § 1983 (1994), in which they alleged deprivation of the rights of plaintiffs Kircher and Winkler to equal protection under the United States Constitution. As to plaintiffs Kircher and Winkler only, we agree.

Equal protection guarantees ensure that persons similarly situated will receive like treatment under the law. *Harris v. The Ark,* 810 P.2d 226 (Colo.1991). In order to establish that a classification violates the equal protection provisions of the federal constitution, a classification must arbitrarily single out a group of persons for disparate treatment and not so treat other persons who are similarly situated. *See Industrial Claim Appeals Office v. Romero,* 912 P.2d 62 (Colo. 1996).

The level of judicial scrutiny in an equal protection challenge varies with the character of the classification and the nature of the rights affected. *Harris v. The Ark, supra.*

The trial court correctly held that the Academy and the Association, if persons,

are not protected persons under the equal protection clause of the Fourteenth Amendment and, therefore, cannot bring a claim under 42 U.S.C. § 1983. *See Pueblo School District No. 70 v. Toth,* 924 P.2d 1094 (Colo. App.1996); *Stanley v. Darlington County School District,* 84 F.3d 707 (4th Cir.1996). In addition, the named individual plaintiffs, other than Kircher and Winkler, are not real parties in interest because they are not aggrieved in a legal sense. C.R.C.P. 17.

Further, plaintiffs Kircher and Winkler do not allege that the District's action of prohibiting Association board members from being employed at the Academy infringes upon a fundamental right or a suspect class. Accordingly, a rational basis test is applicable. *Gallegos v. Phipps,* 779 P.2d 856 (Colo.1989).

Under rational basis scrutiny, an action is presumed to be valid and will be sustained if the classification drawn is rationally related to a legitimate state interest. *Harris v. The Ark, supra; see also Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). The trial court dismissed plaintiffs' claim, holding that the District policy preventing charter school board members from being teachers at the school may prevent potential conflicts at the Academy, and as such, is rational.

Plaintiffs Kircher and Winkler allege that the District refused, or indicated it would refuse, to release funds to pay them as employees of the Association. They further allege that educators of other charter schools were permitted to reserve board member slots for themselves.

The District asserted in its briefs filed in the trial court that the other charter schools were permitted to reserve seats of their boards for educators employed by the charter school and that this was materially different than members of the board hiring themselves as educators.

Neither party submitted any affidavits with respect to this issue, and no policy of the District regarding this matter is in the record on appeal. While there may be a valid distinction between hiring members of the board of a charter school as teachers or administrators and reserving seats on the board for persons so employed by the char-

ter school, we are unable to make that distinction on this record when, as here, we are required to accept the allegations of the complaint as true.

It is unclear from this record whether the complaint alleged that the District was imposing a uniform policy inconsistently or was just imposing a limitation applicable only to the Academy or the two individual plaintiffs. Taking the allegations of the complaint to be true, as we must, we conclude that a violation of Kircher and Winkler's equal protection rights has been adequately pled and that dismissal at this stage is not warranted.

The dismissal of plaintiffs Kircher and Winkler's equal protection claims under 42 U.S.C. §§ 1983 and 1988 is reversed, and the cause is remanded to the trial court for further proceedings on that claim. In all other respects, the trial court's judgment dismissing the complaint is affirmed.

Chief Judge HUME and Judge CASEBOLT concur.