2012 COA 78

Robert ZERBA, Petitioner and Cross–Respondent,

v.

DILLON COMPANIES, INC., d/b/a King Soopers, Respondent and Cross–Petitioner,

and

Industrial Claim Appeals Office of the State of Colorado, Respondent.

No. 11CA1777.

Colorado Court of Appeals, Div. V.

April 26, 2012.

Steven U. Mullens, P.C., Pattie J. Ragland, Westminster, Colorado, for Petitioner and Cross–Respondent.

Thomas Pollart & Miller LLC, Margaret Keck, Greenwood Village, Colorado, for Respondent and Cross–Petitioner.

No Appearance for Respondent.

Opinion by Judge GRAHAM.

¶ 1 This workers' compensation action requires us to examine the statutes governing offsets to permanent total disability (PTD) benefits. Both parties seek review of the final decision of the Industrial Claim Appeals Office (Panel), which allowed employer, Dillon Companies, Inc., doing business as King Soopers, to offset the old-age Social Security payments (SSA) received by claimant, Robert Zerba, against his PTD benefits, but denied King Soopers' request to also offset Zerba's military retirement benefits. *See* Ch. 62, sec. 1, § 8–42–103(1)(c)(I), 1990 Colo. Sess. Laws 488; § 8–42–103(1)(c)(II.5), C.R.S.2011.[1]

¶ 2 Zerba appeals the permitted offset of his SSA payments, arguing that such an offset violates his right to equal protection under the Fourteenth Amendment. King Soopers cross-appeals the Panel's denial of its request for an offset against Zerba's military retirement benefits, contending that they are effectively the same as other payments for which offsets are allowed and therefore should not be treated differently. We reject both parties' arguments and affirm.

¶ 3 We conclude that Zerba has not established that his right to equal protection under the law was violated because the SSA offset has a rational basis and therefore meets constitutional scrutiny. We further hold that section 8–42–103(1)(c)(II.5) does not provide for an offset of military retirement benefits because that provision permits an offset only of "employer-paid retirement benefits." Because King Soopers is not the employer providing Zerba with the retirement benefits in question, it is not entitled to the statutory offset.

I. Background

¶ 4 Zerba served in the military for twenty-eight and one-half years, until his retirement in June 1989. He then began receiving

1. We note that section 8–42–103(1)(c)(I) was amended, effective July 1, 2010. Because Zerba's accident predates the effective date of the amendment, we refer to the version of that statute in effect at the time of his accident.

military retirement benefits, which he continues to receive. After leaving the military, Zerba worked for thirteen years as a receiving manager for K–Mart. At the age of sixty-two, he began drawing SSA benefits.

¶ 5 Subsequently, Zerba began working part time at King Soopers to earn income to supplement his SSA and military retirement benefits. In April 2009, he sustained injuries to his back while working for King Soopers when a rack of milk fell on him, pinning him to the floor. An ALJ found him to be permanently and totally disabled as a result of that accident. Neither party appeals the award of PTD benefits to Zerba. Consequently, the causes and extent of Zerba's injuries are not at issue in this appeal.

¶ 6 In conjunction with the hearing on PTD benefits, King Soopers requested that any PTD benefits be offset by the SSA and military retirement benefits Zerba was also receiving. After reviewing the applicable statutes and case law, the administrative law judge (ALJ) determined that King Soopers was entitled to an offset of Zerba's SSA benefits, but that section 8–42–103(1)(c)(II.5) did not provide for an offset of Zerba's military retirement benefits. The Panel affirmed the ALJ's order.

## II. SSA Offset

¶ 7 Zerba contends that the ALJ and Panel erred in granting King Soopers an offset of his SSA benefits against the PTD benefits he was awarded. He argues that section 8–42–103(1)(c)(I), which permits an offset of a claimant's SSA benefits against that claimant's PTD benefits, unfairly impacts the poor and elderly who work to supplement their SSA payments. The applicable portions of the statute in effect at the time of Zerba's injury provided:

> In cases where it is determined that periodic disability benefits granted by the federal old-age, survivors, and disability insurance act are payable to an individual and said individual's dependents, the aggregate benefits payable for temporary total disability, temporary partial disability, permanent partial disability, and [PTD] pursuant to this section shall be reduced, but not below zero, by an amount equal as nearly

as practical to one-half such federal periodic benefits . . . .

§ 8–42–103(1)(c)(I). Zerba claims this offset disproportionately harms elderly and poor workers by depriving them of the full sum they were receiving when they supplemented their SSA benefits with income. Essentially, he argues that by deducting SSA payments from the PTD benefits intended to replace that income, poor and elderly workers lose economic ground, thereby violating their right to equal protection under the law. However, we perceive no constitutional defect in section 8–42–103(1)(c)(I).

### A. Standard of Review

 ¶ 8 This court has initial jurisdiction to address constitutional challenges to the Workers' Compensation Act (Act). *See MGM Supply Co. v. Indus. Claim Appeals Office*, 62 P.3d 1001, 1003 (Colo.App.2002). If a statute is found to be unconstitutional, we may set aside the Panel's decision concerning that statute as unsupported by the applicable law.

 ¶ 9 In determining whether section 8–42–103(1)(c)(I) is constitutional, "we begin with the presumption that it is valid. Therefore, the burden is on claimant, as the challenging party, to prove the statute is unconstitutional beyond a reasonable doubt." *Peregoy v. Indus. Claim Appeals Office*, 87 P.3d 261, 265 (Colo.App.2004).

### B. Equal Protection

 ¶ 10 The right to equal protection guarantees that similarly situated individuals will receive like treatment under the law. *Harris v. The Ark*, 810 P.2d 226, 229 (Colo. 1991). The level of scrutiny applied when analyzing an equal protection challenge to a statute is dependent upon the nature of the classification created and the right affected.

> If the classification is one involving a 'suspect class,' such as one based on race or national origin, or if it has an impact upon a fundamental right, the state has the burden of demonstrating that the statute is necessarily related to a compelling governmental interest and that the classification

is specially fashioned and narrowly tailored to further its legitimate objective.

*Romero v. Indus. Claim Appeals Office,* 902 P.2d 896, 898 (Colo.App.1995), *aff'd,* 912 P.2d 62 (Colo.1996).

¶ 11 Where, however, the challenged statute does not affect a fundamental right or adversely affect a suspect class, a "traditional or rational basis standard of review applies." *Harris,* 810 P.2d at 230. Under that test, "a statute that treats classes of persons differently will be upheld so long as the classification has a reasonable basis in fact—that is, the classification is based on differences that are real and not illusory— and is reasonably related to a legitimate governmental interest." *Id.* To successfully challenge a statute on equal protection grounds, "the party asserting the statute's unconstitutionality must show that the classification lacks a legitimate governmental purpose and, without a rational basis, arbitrarily singles out a group of persons for disparate treatment in comparison to other persons who are similarly situated." *Dillard v. Indus. Claim Appeals Office,* 134 P.3d 407, 413. (Colo.2006).

¶ 12 Colorado courts have repeatedly held that workers' compensation claimants are not a suspect class and that workers' compensation benefits are not a fundamental right. *See id.; Kroupa v. Indus. Claim Appeals Office,* 53 P.3d 1192, 1197 (Colo.App.2002). Unless Zerba has established that he is a member of a suspect class created by the application of the statute, we will apply the rational basis test to his equal protection challenge. *See Dillard,* 134 P.3d at 413.

¶ 13 Zerba suggests that he is part of a subclass he identifies as "the poor" and "the elderly." He asserts that the classification created by section 8–42–103(1)(c)(I)— "the poor" and "the elderly"—arbitrarily and disparately deprives those in these classes from benefits which other PTD beneficiaries receive. As the statute itself does not create these distinctions—references to those over age sixty-five were removed by amendment in 2000—we view Zerba's challenge as one to a classification created by the statute *as applied. See Pepper v. Indus. Claim Appeals Office,* 131 P.3d 1137, 1139 (Colo.App.2005)

("The distinction between a 'facial' and an 'as applied' equal protection challenge is not always clear cut. A facial challenge is supported where the law by its own terms classifies persons for different treatment. In contrast, a statute, even if facially benign, may be unconstitutional as applied where it is shown that the governmental officials who administer the law apply it with different degrees of severity to different groups of persons who are described by some suspect trait."), *aff'd on other grounds sub nom. City of Florence v. Pepper,* 145 P.3d 654 (Colo.2006).

¶ 14 To the extent Zerba asserts these class distinctions to garner a less stringent standard of constitutional review, we must reject his position. With respect to his contention that he is a member of a class defined as "the elderly," we note that "[c]lassifications based on age are not suspect or special warranting strict scrutiny or intermediate review." *Indus. Claim Appeals Office v. Romero,* 912 P.2d 62, 66 (Colo.1996) (citing *Mass. Bd. of Ret. v. Murgia,* 427 U.S. 307, 313–14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)). Thus, even if Zerba is a member of the class defined as "the elderly," the classification does not warrant strict scrutiny or intermediate review.

¶ 15 With respect to the former categorization, "the poor," we note that Zerba has neither defined the parameters of the alleged class of "the poor" nor provided any evidence to demonstrate he is a member of such class. On the contrary, as King Soopers points out, the evidence indicates that Zerba's income, albeit from retirement and other benefits, is above the current minimum wage. Because Zerba has not established he is a member of the class he characterizes as "the poor," we decline to consider his challenge to the statute's alleged unequal treatment of "the poor."

¶ 16 Therefore, because Zerba is not a member of a suspect or special class warranting strict scrutiny or intermediate review, and because workers' compensation benefits are not a fundamental right, we must analyze section 8–42–103(1)(c)(I) under the rational basis test. *See Dillard,* 134 P.3d

at 413. Under that test, we must uphold the provisions of section 8–42–103(1)(c)(I) unless Zerba has shown beyond a reasonable doubt that the classification created by the statute lacks a legitimate governmental purpose and arbitrarily and disparately treats the poor or the elderly in comparison to other persons who are similarly situated. *Id.* We conclude that he has not.

¶ 17 In *Culver v. Ace Electric,* 971 P.2d 641 (Colo.1999), the Colorado Supreme Court held that section 8–42–103(1)(c)(II), which provided an offset identical to that at issue here, was constitutional and did not violate equal protection. *See* Ch. 62, sec. 1, § 8–42–103(1)(c)(II), 1990 Colo. Sess. Laws 488. Zerba contends that *Culver* is inapposite because the version of the statute at issue there retained the language "when the individual reaches the age of sixty-five years." That language was removed by amendment in 2000 and consequently was not in effect at the time of Zerba's injuries. *See* Ch. 364, sec. 1, § 8–42–103(1)(c)(II), 2000 Colo. Sess. Laws 1762.

¶ 18 However, in our view, the changes to section 8–42–103(1)(c)(II) are inconsequential for our purposes. We perceive no appreciable distinction between the language of section 8–42–103(1)(c)(I) applicable to this case and the language of section 8–42–103(1)(c)(II) at issue in *Culver.* Under both subsections, and also their current versions, an employer may seek an offset against PTD benefits for "federal old-age, survivors, and disability insurance" benefits that a claimant may be receiving. Thus, *Culver's* interpretation of the statutory offset is relevant and applicable here.

¶ 19 The supreme court concluded in *Culver* that the statutory offset for SSA benefits served "the legitimate governmental purpose of preventing a duplication of benefits." 971 P.2d at 645. Although *Culver* addressed a *facial* classification in the statute—those over the age of sixty-five—its analysis remains directly on point here. Like the claimant in *Culver,* Zerba asserts he is being treated differently because of his age and receipt of SSA benefits. The supreme court found that the legitimate governmental purpose of ensuring benefits are not duplicated justified

the creation of a class of workers over sixty-five. *Id.*

¶ 20 Nor are we persuaded by Zerba's argument that because he was receiving SSA benefits before he was found to be permanently and totally disabled, the offset classification disproportionately affects him. This very argument was rejected by the supreme court in *Culver* when it observed that the "order in which a worker becomes eligible for these benefits does not make a difference, given the statute's plain wording." *Id.* at 654. Rather, the supreme court held that the legitimate legislative intent to avoid duplication of benefits "requires that social security retirement benefits be offset against the injured employee's workers' compensation benefits, despite the fact that retirement benefits are not designed to compensate a claimant for an industrial injury." *Id.*

¶ 21 In our view, Zerba has not demonstrated that the legitimate governmental purpose for SSA offsets articulated in *Culver* no longer exists. The governmental purpose and desire to avoid duplication of benefits is as relevant today as it was thirteen years ago when *Culver* was decided. We perceive no reason to stray from the supreme court's reasoning here.

¶ 22 Accordingly, we conclude that Zerba has not demonstrated beyond a reasonable doubt that section 8–42–103(1)(c)(I) violates his right to equal protection under the law. Neither the Panel nor the ALJ therefore erred in determining that King Soopers was entitled to an offset of Zerba's SSA benefits against the PTD award.

### C. Calculation of Benefits

¶ 23 Zerba argues in the alternative that if the offset of SSA benefits against his PTD is upheld, then a review of the ALJ's calculation of his benefits and the offset is warranted. In particular, he contends that his SSA benefits should have been "considered in the calculation of the temporary disability rate before the [fifty percent] offset can be seen to apply." He argues that including SSA benefits he was already receiving in the calculation of his "temporary disability rate"

"protect[s] the constitutionality of the Act as applied to the elderly and the poor."

¶ 24 We note first that King Soopers contends that Zerba did not preserve this issue for appellate review because he did not assert average weekly wage (AWW) as an issue at the hearing. The Panel agreed and did not address this issue, concluding Zerba had not preserved the issue for review.

¶ 25 It is true that Zerba did not identify AWW as an issue in his application for hearing. However, as Zerba points out, at the hearing, his counsel raised this issue when she stated: "I don't believe that our reading [of] the statute entitles respondents to those benefits unless they are included within the original calculation of his wages and then the offsets applied, because otherwise the employer has a windfall." In addition, it appears to us that Zerba also raised this issue in his position statement to the ALJ. There, Zerba argued that the ALJ had discretion to calculate his AWW "in any manner which will fairly determine the claimant's wage under the circumstances," and further stated that "[u]nless the income based upon which the SSA offset may be taken is considered also at the time of his injury, [employer] will receive a windfall not intended by the legislature." As we understand Zerba's argument here, it appears to us to parallel his position statement before the ALJ.

¶ 26 Moreover, an issue that is encompassed within a broader issue may be addressed on appeal. See City & Cnty. of Denver v. Indus. Claim Appeals Office, 58 P.3d 1162, 1165 (Colo.App.2002) (specific issue sought to be argued on appeal must be encompassed in the broader issue addressed in administrative proceedings); City of Durango v. Dunagan, 939 P.2d 496, 500 (Colo. App.1997). The proper calculation of benefits is necessarily encompassed within the issue of PTD and offsets, both of which were endorsed in the application for hearing and response thereto. See Coates, Reid & Waldron v. Vigil, 856 P.2d 850, 855 (Colo.1993) ("[W]here an employee who is paid on a weekly basis has incurred a single disabling work-related injury, the claimant's disability benefits are derived from his or her [AWW] in effect at the time of the subject injury.").

In our view, then, the issue was sufficiently preserved for appellate review.

¶ 27 Zerba essentially argues that the ALJ misapplied the statute when calculating the amount of his benefit before any offsets were taken. He contends that to avoid violating equal protection, the ALJ must be directed "to include within [Zerba's] temporary disability rate the amount of SSA benefits received by [him] at the time of his injury." In other words, Zerba suggests that his AWW should incorporate the very benefits which are then to be offset under section 8–42–103(1)(c)(I).

¶ 28 An ALJ has broad, statutorily granted discretion to calculate AWW "in such other manner and by such other method as will, in the opinion of the director based upon the facts presented, fairly determine such employee's [AWW]." § 8–42–102(3), C.R.S. 2011; see also Pizza Hut v. Indus. Claim Appeals Office, 18 P.3d 867, 869 (Colo.App. 2001) ("[Section] 8–42–102(3) ... grants the ALJ discretionary authority to calculate the [AWW] in some other manner if the prescribed methods will not fairly calculate the wage in view of the particular circumstances."). We therefore may not set aside the ALJ's AWW calculation "unless it is beyond the bounds of reason, that is, where it is unsupported by the evidence or contrary to law." Id.

¶ 29 Zerba asserts that the ALJ's method of calculating benefits violated his right to equal protection. Although the Panel did not rule on this issue, because Zerba essentially raises a constitutional challenge to his benefits calculation, the issue may be addressed as a matter of law, rendering a decision from the Panel on the issue unnecessary. See Munoz v. Indus. Claim Appeals Office, 271 P.3d 547, 550 (Colo.App.2011) (appellate court could address issue on statutory interpretation although Panel did not because issue could be decided as a matter of law).

¶ 30 Zerba offers no legal authority in support of his contention that the ALJ misconstrued the statute when calculating his benefit. Nor does he establish how the stat-

ute creates a class of individuals treated unequally from others similarly situated. He does not define the parameters of the class of which he is purportedly a member and whose constitutional rights to equal protection are allegedly violated by the ALJ's calculation method. Indeed, the ALJ adopted King Soopers' AWW calculation set forth in its final admission of liability, to which Zerba made no objection until King Soopers sought an offset against his SSA benefits. Only then did he claim the calculation was unfair, and only now does he contend that it also violated his constitutional rights.

¶ 31 However, in the absence of a defined class or a clear articulation of the constitutional violation created by the statute's application, we cannot say that Zerba has expressed a viable constitutional challenge to the ALJ's AWW calculation. Because Zerba has not established the most basic elements of an equal protection challenge against the ALJ's calculation of his PTD benefit, we conclude that he has not met his burden of demonstrating that the statute, as applied, violates his right to equal protection. *See Dillard,* 134 P.3d at 413 (party challenging statute on constitutional grounds must show that "the classification lacks a legitimate governmental purpose and, without a rational basis, arbitrarily singles out a group of persons for disparate treatment in comparison to other persons who are similarly situated"); *Peregoy,* 87 P.3d at 265 (claimant bears burden of demonstrating unconstitutionality of provision of Act beyond a reasonable doubt).

¶ 32 We therefore perceive no basis for setting aside the ALJ's calculation of Zerba's PTD benefits before offsetting his SSA benefits.

### III. Military Retirement Benefits Offset

¶ 33 In its cross-appeal, King Soopers contends that the ALJ and the Panel erred in denying it an offset for Zerba's military retirement benefits. King Soopers argues, however, that an offset for military retirement benefits should not be treated differently from the offset for Supplemental Security Income benefits discussed in *Culver* because the General Assembly "clearly intended to address the offset of all retire-

ment benefits, regardless of whether they are funded by social security or an employer that does not participate in the social security system, such as the military." It maintains that the Panel interpreted the applicable statute, section 8–42–103(1)(c)(II.5) too narrowly by refusing to allow an offset for a retirement benefit paid by a different employer. We are not persuaded.

¶ 34 Section 8–42–103(1)(c)(II.5) provides that disability indemnity payments shall be payable subject to the following limitation:

> In cases where an employer does not participate in federal old-age, survivors, and disability insurance, and it is determined that employer-paid retirement benefits are payable to an individual and the individual's dependents, the aggregate benefits payable for [PTD] pursuant to this section shall be reduced, but not below zero by an amount determined as a percentage of the employer-paid retirement benefits, said percentage to be determined by a weighted average of the employer's contributions during the period of covered employment divided by the total contributions during the period of covered employment.

Relying upon *Spanish Peaks Mental Health Center v. Huffaker,* 928 P.2d 741 (Colo.App. 1996), the Panel concluded that section 8–42–103(1)(c)(II.5) did not allow an offset of Zerba's military retirement benefits. We must determine if the Panel's reliance on *Spanish Peaks* was appropriate.

### A. Standard of Review

¶ 35 We interpret provisions of the Act de novo, giving "considerable weight" to the Panel's interpretation of the statute it administers. *See Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 326 (Colo.2004).

### B. Rules of Statutory Construction

¶ 36 When interpreting a statute, we must give effect to the legislative intent and "construe all terms of a statute harmoniously, avoiding a strained or forced construction of any of its terms." *Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023, 1036 (Colo.2004); *see also Anderson,* 102 P.3d at 326 (our duty is "to effectuate the intent and

purpose of the General Assembly"). Hence, we apply "the plain and ordinary meaning of the statute, if clear." *Anderson,* 102 P.3d at 326; *see also Indus. Claim Appeals Office v. Orth,* 965 P.2d 1246, 1252 (Colo.1998).

¶ 37 While we are not bound by the Panel's interpretation or its earlier decisions, *Olivas–Soto v. Indus. Claim Appeals Office,* 143 P.3d 1178, 1180 (Colo.App.2006), and review statutory construction de novo, *Ray v. Indus. Claim Appeals Office,* 124 P.3d 891, 893 (Colo.App.2005), *aff'd,* 145 P.3d 661 (Colo.2006), we give deference to the Panel's reasonable interpretations of the statute it administers. *Sanco Indus. v. Stefanski,* 147 P.3d 5, 8 (Colo.2006); *Dillard v. Indus. Claim Appeals Office,* 121 P.3d 301, 304 (Colo.App.2005), *aff'd,* 134 P.3d 407 (Colo. 2006). In general, "an administrative agency's interpretation of its own regulations is ... entitled to great weight and should not be disturbed on review unless plainly erroneous or inconsistent with such regulations." *Jiminez v. Indus. Claim Appeals Office,* 51 P.3d 1090, 1093 (Colo.App.2002). The Panel's interpretation will therefore be set aside only "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Office,* 968 P.2d 174, 175 (Colo.App. 1998).

### C. Interpretation of Section 8–42–103(1)(c)(II.5)

¶ 38 As set forth above, section 8–42 –103(1)(c)(II.5) provides an offset of "employer-paid retirement benefits" when the employer "does not participate in federal old-age, survivors, and disability insurance." King Soopers asks that offsets permitted under this provision be treated identically to offsets allowed by section 8–42–103(1)(c)(II) and thus broadly encompass any retirement benefits.[2]

¶ 39 Although King Soopers characterizes the offset against military retirement benefits as a matter of first impression, we find the analysis in *Spanish Peaks,* which the Panel followed, relevant and applicable. In *Spanish Peaks,* a division of this court held that no offset could be taken for a pension plan financed by an employer different from the employer paying a claimant benefits under the Act. 928 P.2d at 743. Rather, the "statutory offset is available only to an employer who has already paid the cost of the injured employee's workers' compensation insurance and has also purchased or contributed to a disability pension plan covering that employee." *Id.*

¶ 40 Like the subsection at issue in *Spanish Peaks,* section 8–42–103(1)(c)(II.5) specifically refers to "*the* employer-paid retirement benefits" and "*the* employer's contribution." The General Assembly's use of a definite article, "the," suggests to us that it did not intend all retirement benefits to be offset under this subsection; rather, the offset may only be taken by the employer that contributed to the retirement plan. *Spanish Peaks* is consequently instructive.

¶ 41 Further, the plain language of the statute requires the narrow construction adopted by the Panel. Contrary to King Soopers' suggestion that the Panel improperly narrowed its ruling to prohibit offsets of military retirement benefits, the Panel appears to have followed the statutory mandate that offsets could only be taken for "*the* employer-retirement benefits" and "*the* employer's contributions" without any reference to military benefits specifically. As we read the Panel's opinion and the statute, the offset only applies to employers who have contributed to or paid into the particular retirement plan to be offset. Because the Panel's interpretation is not "inconsistent with the clear language of the statute or with the legislative intent," we perceive no basis for setting it aside. *Support, Inc.,* 968 P.2d at 175.

¶ 42 We therefore conclude that neither the Panel nor the ALJ erred in denying King Soopers' request for an offset of Zerba's military retirement benefits.

¶ 43 The order is affirmed.

Judge CARPARELLI and Judge BOORAS concur.

---

2. Although not argued by the parties, it appears that section 8–42–103(1)(c)(II.5) would not assist

King Soopers in any event, owing to the limitation in the first sentence of the subsection.